EDWARD E. POETZ, PLAINTIFF-APPELLANT, v. SARAH
MIX AND DELAWARE, LACKAWANNA AND WESTERN
RAILROAD COMPANY, A CORPORATION, DEFENDANTS-
RESPONDENTS.

Argued April 30, 1951—Decided June 18, 1951.

438

*Mr. Perry E. Belfatto* argued the cause for the appellant.

*Mr. Robert Shaw* argued the cause for the respondent Sarah Mix (*Messrs. Duggan, Shaw and Hughes,* attorneys).

*Mr. Donald R. Creighton* argued the cause for the respondent Delaware, Lackawanna and Western Railroad Company; *Mr. Allan W. Reusch* on the brief.

The opinion of the court was delivered by

ACKERSON, J. This is an action in tort to recover damages for personal injuries alleged to have been caused by defendants' negligence. The main question presented for decision is whether such action was commenced within the two-year limitation period prescribed by the statute of limitations (*R. S.* 2:24–2).

The proofs disclose, without contradiction, that the accident occurred on July 16, 1947. Plaintiff at the time of the occurrence was engaged in his occupation as an employee of the Berger-Poetz Fuel Company in Paterson. The complaint in this action was stamped by the Clerk of the Superior Court in the following manner: "Received July 18, 1949" (being a Monday); "Filed July 16, 1949" (being a Saturday), and filing fee "Paid July 20, 1949." The "received" stamp was, according to the usual procedure, the first stamp placed upon a complaint when received in the Clerk's office and the file date was the next to be stamped thereon. The proofs also establish that it was the custom of the Clerk's office at the time in question to hold mail received on Saturdays unopened until Monday when it was opened and stamped as received on the Monday. The complaint herein also bears the penciled notation "N. C.," meaning that no check accompanied its receipt. The uncontradicted proofs further show that there was not sufficient money in the account which plaintiff's attorney kept with the clerk to cover the filing fee and that such funds were not made available until July 20, 1949, when the complaint was stamped "Paid July 20, 1949."

The defendants by their respective answers, as amended by the pretrial order, beside denying the charge of negligence, set forth the following separate defenses to plaintiff's claim, *inter alia*: (1) the statute of limitations, and (2) that the named plaintiff was not the real party in interest. Both of these separate defenses were incorporated into motions "to dismiss" (actually motions for judgment on the pleadings, *Rule* 3:12–3). Upon the return day of the motions, deposi-

tions were submitted and testimony was taken in open court with respect to the aforementioned grounds. The trial judge therefore treated such motions as the equivalent of motions for summary judgment pursuant to *Rules* 3:12–3 and 3:56. At the conclusion of the hearing, the trial court granted defendants' motion on the first of the above grounds, *i. e.*, that the suit was barred by the statute of limitations. Plaintiff appealed to the Appellate Division from the judgment entered thereon and we certified the cause on our own motion.

The applicable statute of limitations, *R. S.* 2:24–2 provides:

"All actions for injuries to the person caused by the wrongful act, neglect or default of any person or persons, * * * shall be commenced within two years next after the cause of any such action shall have accrued, and not thereafter."

Under the rules of civil procedure an action is commenced by the filing of the complaint. *Rule* 3:3–1. The essential issue is as to the time the plaintiff was entitled to have the complaint treated as "filed" within the contemplation of that rule.

Plaintiff argues that the trial court erred in dismissing the action as barred by the statute of limitations. Reliance is placed upon the aforementioned practice prevailing in the clerk's office of holding mail received on Saturday unopened until the following Monday when it was stamped as received, and, according to plaintiff's contention, is filed as of the preceding Saturday. The record here shows that July 16, 1949, was on Saturday and that July 18, 1949, fell on a Monday. Since the complaint herein bears the stamps "Received July 18, 1949" and "Filed July 16, 1949," the plaintiff would have the court infer that the complaint was actually received by the clerk in the ordinary course of mail on Saturday, July 16, 1949, and filed *nunc pro tunc* as of that date. However, for other reasons presently to appear, it is unnecessary to explore the theory thus advanced.

Defendants maintain that there are several essential acts which a party must perform before he is entitled to have a paper marked filed, *i. e.*, (1) the presentation of the paper at the clerk's office, (2) payment of the filing fee. Counsel for the defendant railroad company further argues that the "processing" of a complaint after receipt by the clerk of the requisite filing fee is synonymous with the term "filed" and that such processing is a condition precedent to an effective filing.

In arguing that the payment of a fee is a prerequisite to an effective filing, defendants direct the attention of the court to the provisions of *R. S.* 22:1A–5 and *Rule* 3:5–7. The contention made is that the statute makes it mandatory that a fee be paid upon the filing of a. paper and that the same requirement is inferable from the aforesaid rule which punishes the failure to do so.

*R. S.* 22:1A–5 provides:

"Upon the filing or entering of the first paper or proceeding in any action or proceeding in the Law Division of the Superior Court, the plaintiff shall pay ten dollars ($10.00) for the first paper filed by him, to the clerk, * * *."

*Rule* 3:5–7 provides:

"No attorney shall present, or cause to be presented, any paper for * * * filing, unless he shall have paid to the clerk the fees due in respect thereof. Any breach of this rule, even though inadvertent, shall constitute a contempt in facie curiae."

These provisions, however, are merely directory so far as effective filing is concerned. The statute (*R. S.* 22:1A–5) fixes the time when the fee is payable, and the rule (*Rule* 3:5–7) places the burden of attending to the payment upon the attorney. It is significant that the payment of the requisite fee is not made an integral part of filing, but rather, is treated as a separate act. Attorneys are required to pay fees in advance; failure to do so not only places the attorney in contempt of court, but also renders him personally liable

therefor, except in the instances specified in the statute, *R. S.* 22:1*A*–16. Clerks are likewise personally responsible for payment of filing fees and are directed to collect them in advance "for their own protection," *R. S.* 22:4–16. By *R. S.* 22:4–14 the clerk is accountable for all monies which come into his hands.

We think it is reasonably inferable from a fair reading of the above-mentioned provisions that they are not intended to deprive a party of the benefit of an actual filing completed before the payment of the filing fee. In contemplation of law, a paper or pleading is considered as filed when delivered to the proper custodian and received by him to be kept on file. The endorsement of the clerk does not, according to the greater weight of authority, constitute a part of the filing but is merely evidence of that fact. *Oats v. State,* 153 *Ind.* 436, 55 *N. E.* 226 (*Ind. Sup. Ct.* 1899); *Dwight v. Hazlett,* 107 *W. Va.* 192, 147 *S. E.* 877, 66 *A. L. R.* 102 (*W. Va. Sup. Ct. of App.* 1929); 41 *Am. Jur., Pleading,* § 316, *pp.* 509–510; 45 *Am. Jur., Records and Recording Laws,* § 6, *p.* 422; and cases cited in 16 *Words and Phrases (File) pp.* 537, 549 *et seq.* The rule has been aptly expressed in this jurisdiction in the case of *Mahnken v. Meltz,* 97 *N. J. L.* 159 (*E. & A.* 1921), at *page* 161, in the following language:

"Originally, 'filing' consisted of putting writs and other exhibits in courts and offices upon a string or wire for safekeeping and ready reference. In modern usage it consists in placing in the custody of the proper official the paper to be filed, and while his duty undoubtedly requires his making a proper endorsement upon the paper so deposited, it is undoubtedly filed in theory and contemplation of law, when lodged with the proper officer."

This is borne out by *Rule* 3:5–6 entitled "Filing with the Court Defined" which provides that the filing of pleadings and other papers with the court as required by the rules of practice "shall be made by filing the original and either a duplicate original or a clear carbon copy with the clerk of the Superior Court * * *." No mention whatsoever is made of a filing fee as a condition precedent to filing.

■■ The clerk of the court may, however, justifiably refuse to file the paper until the proper fee has been paid. *R. S.* 22:4–16. In the case of *Korfin v. Continental Casualty Co.,* 5 *N. J.* 154, 157 (1950), recently decided by this court and cited by the parties herein, the Clerk of the Superior Court refused to file a notice of appeal until the appellant had paid the full amount of the requisite fee. We held there that under such circumstances the paper was filed when the fee was fully paid since the clerk had actually exercised his prerogative under the statute. The case *sub judice* is clearly distinguishable for here there was no refusal to receive and file the complaint until the fee was fully paid. On the contrary, it was stamped as received and filed several days before the attorney's account was made good. By the language of the statute (*R. S.* 22:4–16); the clerk "may exact in advance" the fees and costs of filing "For their own protection." It is therefore a requirement which the clerk may by his own behavior waive and thereby accept personal liability for the payment.

The case of *Clemens Electrical Manuf'g. Co. v. Walton,* 168 *Mass.* 304, 47 *N. E.* 102 (*Mass. Sup. Jud. Ct.* 1897) we believe is quite analogous. There, a petition to establish the truth of exceptions was delivered and received by the person in charge of the clerk's office who endorsed it as follows: "Bristol–ss.: Sup. Jud. Court. Filed & entered Jan. 12, 1897. Simeon Borden, Clerk." No entry fee was paid or demanded. A Massachusetts statute, *St.* 1891, *c.* 87, provided: "No * * * petition shall be entered or filed by the clerk until said fee is paid," and under the law of that state the petition was required to be filed within 20 days after notice of the refusal of the judge to sign and allow the bill of exceptions. January 12, 1897, was the nineteenth day after refusal. Another Massachusetts statute required that "the clerks of the courts shall collect all fees in advance." *St.* 1888, *c.* 257. The clerk later demanded and was paid the filing fee and against the protest of the petitioner made the following entry in the docket, *i. e.,* "Petition received

Jan. 12, 1897. Entry fee received Jan. 15, 1897. Filed and entered Jan. 15, 1897." The opposing party advanced the argument (as do the defendants here) that there could not be a legal filing until the time when the entry fee was paid. The court rejected this contention holding that the provision requiring the clerks to collect fees in advance was directory to them for the purpose of holding them accountable for their collection and also to avoid the importunities of parties or lawyers who sought credit for the payment of their fees. The court further held that:

"The effect of filing with the proper officer at the proper place, of papers required to be filed, ought not to be affected by the question whether the proper legal fees have or have not been paid, if the fees are paid which are demanded. The mistake, if any has been made, can be corrected afterwards. We are of opinion that under the circumstances shown in this case the petition was properly filed, * * *, when it was received at the proper office * * *, and indorsed * * * as filed and entered on January 12, 1897."

Since, in the case *sub judice*, the clerk's office was closed on Saturday, July 16, 1949, due to the holiday statute then in effect (*R. S.* 36:1–1.1), it does not appear, except for the stamps thereon, whether the complaint reached the office on July 16 and remained unattended to until Monday, July 18, and was then stamped "Filed July 16, 1949," or whether it reached the office on July 18, according to the stamp "Received July 18, 1949." At any rate it is conceded that it was in the office on July 18 and was stamped as received on that date and also bears the stamp "Filed July 16, 1949." Under these circumstances the plaintiff was entitled to the benefit of the filing not later than July 18, 1949. *Mahnken v. Meltz, supra.* The fact that the filing fee was not demanded in advance of the paper being stamped as received and filed, did not prevent the court from acquiring jurisdiction since, as we have noted, such requirement is merely directory. We conclude therefore, that the actual receipt of the pleading by the Clerk of the Superior Court on July 18, 1949, and the marking of it as filed, under the

circumstances exhibited by the record before us, constituted an effective filing. *Cf. Dowie v. Chicago, W. & N. S. Ry. Co.*, 214 *Ill.* 49, 73 *N. E.* 354, 356 (*Ill. Sup. Ct.* 1905); *Elles v. Industrial Commission*, 375 *Ill.* 107, 30 *N. E. 2d* 615 (*Ill. Sup. Ct.* 1940); *Clemens Electrical Manuf'g. Co. v. Walton, supra.*

The question still remains whether such filing was within the two-year period of the statute of limitations, *R. S.* 2:24–2. It was early established in this State, in accordance with the prevailing view elsewhere, that in computing time under the statute of limitations the day on which the cause of action accrued is not to be counted. *McCulloch v. Hopper*, 47 *N. J. L.* 189 (*Sup. Ct.* 1885); 34 *Am. Jur.*, *Limitation of Actions*, § 252, *pp.* 206-207. *Rule* 1:7–8 is in accord. Therefore, since the plaintiff's cause of action in the instant case accrued on July 16, 1947, the two-year limitation period established by the statute was reached on July 16, 1949, which happened to be a Saturday. This fact becomes important because both Saturday and Sunday, July 16 and 17, 1949, were legal holidays in this State pursuant to the provisions of *R. S.* 36:1–1 and *R. S.* 36:1–1.1 whereby public offices are closed to the transaction of business on Sundays and legal holidays and on Saturdays during the months of July and August. *R. S.* 36:1–1.1 provides as follows:

"Each Saturday in the month of July and August in each year shall, for all purposes whatsoever as regards the transaction of business in the public offices of this State, and the counties and municipalities in this State, be considered as the first day of the week, commonly called Sunday, and as public holidays."

Although there is diversity of opinion elsewhere, it is well settled in this State that where, by statute, an act is due arithmetically on a day which turns out to be a Sunday or legal holiday, it may be lawfully performed on the following day, and if that day be also a *dies non* on which the public offices are closed to the transaction of business, according

to the "holiday acts," *supra,* a similar rule applies. *Von de Place v. Weller,* 64 *N. J. L.* 155, 156 (*Sup. Ct.* 1899); *Southern Power Co. v. Cella,* 105 *N. J. L.* 573 (*E. & A.* 1929); *Feuchtwanger v. McCool,* 29 *N. J. Eq.* 151 (*Ch.* 1878); *Great Falls Power Co. v. Andrus,* 7 *N. J. Misc.* 3 (*Sup. Ct.* 1928); *Ellrick v. State Board of Tax Appeals,* 12 *N. J. Misc.* 432, 436 (*Sup. Ct.* 1934); *Williams v. Minsavich,* 3 *N. J. Misc.* 565 (*Warren Co. Cir. Ct.* 1925); *Union Nat. Bank v. Lamb,* 337 *U. S.* 38, 93 *L. Ed.* 1190, 1194, 69 *S. Ct.* 911 (1948). While these cases do not involve the application of the general statute of limitations, nevertheless, the same principle is invocable. Recognizing the conflict of authority in other jurisdictions, we believe the better view to be that where the last day of the period prescribed by the statute of limitations for commencing an action (in the absence of a controlling statute to the contrary) falls on a Sunday or a legal holiday (Saturdays during July and August by *R. S.* 36:1–1.1) when public offices are legally closed to the transactions of business, such an action commenced on the next day which is not a *dies non* is not too late. *Edmundson v. Wragg,* 104 *Pa.* 500, 49 *Am. Rep.* 590 (*Pa. Sup. Ct.* 1884); *Van Duyn v. Van Duyn,* 129 *Wash.* 428, 225 *Pac.* 444 (*Wash. Sup. Ct.* 1924); *Lutz's Appeal,* 124 *Pa.* 273, 16 *A.* 858 (*Pa. Sup. Ct.* 1889); *Lamberti v. City of Stamford,* 131 *Conn.* 396, 40 *A. 2d* 190 (*Conn. Sup. Ct. of Errors* 1944); 62 *C. J., Time,* § 53(*c*), *p.* 1003. *Cf. United States v. Cia Luz Stearica,* 181 *Fed. 2d* 695 (*C. C. A. 9th* 1950); *Sherwood Bros. v. District of Columbia,* 113 *Fed. 2d* 162 (*C. C. A. Dist. Col.* 1940).

We think it must be assumed that the Legislature, in enacting the so-called "holiday acts" (*R. S.* 36:1–1 and *R. S.* 36:1–1.1) whereby designated days are made *dies non* when the public offices of the State are not open for the transaction of business, was not unmindful of the general statute of limitations and did not intend the first-mentioned enactments to have the effect of further limiting the period in which actions for the redress of wrongs might be commenced by the filing of complaints in the clerks' offices of our courts.

But, on the contrary, contemplated that such days, when coming at the end of the limitation period, would be excluded in computing the actual termination thereof. The matter is one of statutory construction, and in reaching the foregoing conclusion we do not read an exception into the statute of limitations; instead we harmonize, as far as possible, two somewhat conflicting statutes to arrive at what we believe to be the real legislative intent. See *Lamberti v. City of Stamford, supra*; *Sherwood Bros. v. District of Columbia, supra*. Such construction will best protect the interests of litigants and must for that reason be presumed to carry into effect the legislative intent. *Von de Place v. Weller, supra,* page 156; *Ettrick v. State Board of Tax Appeals, supra,* page 437.

We have not overlooked *Rule* 1:7–8, adopted September 15, 1948, which concerns the "Computation of Time in All Courts" and provides as follows:

"In computing any period of time the day of the act or event after which the designated period begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Sunday or legal holiday, in which event the period runs until the end of the next day which is neither a Sunday nor a holiday. When a period of time prescribed or allowed is less than 7 days, intermediate Sundays and holidays shall be excluded in the computation. Saturdays shall be considered as other days and not as holidays."

This rule was intended to deal with two distinct situations in the computation of time in court proceedings, *i. e.,* long and short periods of time for required procedures. The last sentence providing that "Saturdays shall be considered as other days and not as holidays" refers and is confined to Saturdays "When a period of time prescribed or allowed is less than 7 days," and does not affect the preceding part of the rule which deals wholly with the *terminal* days of longer periods. The reason for this distinction is obvious. Unquestionably it was not intended to have the effect of shortening the time prescribed by the Legislature in which actions may be instituted.

 We therefore conclude, on the record before us, that the filing of the complaint was timely and it was error to dismiss the cause of action asserted therein as barred by the statute of limitations.

The defendants further contend that the instant action was instituted in the name of Edward E. Poetz, the injured party, by his employer's insurance carrier as the real party in interest, without giving said employee the ten-day written demand to either effect a settlement with or institute proceedings against the defendant tortfeasors as required by *R. S.* 34:15–40(*f*). This enactment provides as follows:

"When an injured employee or his dependents fail within one year of the accident to either effect a settlement with or institute proceedings for recovery of damages for his injuries and loss against the third person or corporation, the employer or his insurance carrier, ten days after a written demand on the injured employee or his dependents, can either effect a settlement with or institute proceedings against the third person or corporation for the recovery of damages for the injuries and loss sustained by such injured employee or his dependents and any settlement made or proceedings had and taken by such employer or his insurance carrier * * * shall constitute a bar to any further claim or action by the injured employee or his dependents against the third person or corporation. * * * The legal action contemplated herein above shall be a civil action at law in the name of the injured employee or by the employer or insurance carrier in the name of the employee to the use of the employer or insurance carrier, or by the proper party for the benefit of the next of kin of the employee."

Therefore, the defendants argue that such written demand upon the injured party is a condition precedent to the insurance carrier's statutory right of subrogation, and since it is admitted that such a written demand was not made, the present action may not be maintained by the carrier in the name of the injured employee.

 The requirement of such a written demand, however, is undoubtedly for the benefit of the injured employee, and he may waive it, especially where, as here, the action would have been barred if the requirement had been observed since the carrier understood that he intended to

proceed by himself until the statutory "time had nearly lapsed." The record indicates that Poetz, the injured employee, was apprised by the carrier's representative on several occasions prior to the institution of the present suit of his right to institute such an action and of the carrier's right and intention to do so if he failed to proceed, and of the relative rights of each party in the proceeds of any such action. The present action is in the name of the injured employee, not in the name of the insurance carrier, and the plaintiff has not disavowed or repudiated the action thus taken by the carrier. On the contrary he has cooperated by signing answers to interrogatories propounded to him as a party, and in his deposition, used on the argument of the motions in question, he stated that, although he had taken no steps personally to enforce any claim he might have against the defendants, nevertheless, he understood that the insurance carrier had the right to do that for him and he "intended to go ahead with that right." It is argued that the statute is in derogation of the common law, and must be strictly construed, but it is also in derogation of the injured party's common law right of action, and is not to be construed to defeat such right where, as here, the injured party has not disavowed the action started in his name, but on the contrary has approved thereof. Obviously, on the basis of the facts before us, the defendants have not shown their right to a dismissal of the plaintiff's complaint on the ground last above stated.

The judgment below is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*For reversal*—Justices CASE, HEHER, WACHENFELD, BURLING and ACKERSON—5.

*For affirmance*—Chief Justice VANDERBILT, and Justice OLIPHANT—2.