140 N.J. Super. 177 (1976)
355 A.2d 702
CORINNE MILLER, PLAINTIFF-APPELLANT,
v.
ESTATE OF LOUIS KAHN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1975.
Decided March 9, 1976.
*179 Before Judges FRITZ, SEIDMAN and MILMED.
Mr. Bruce M. Pitman argued the cause for appellant (Messrs. Diamond, Grossman, Pitman, Udine & Anzaldi, attorneys).
Mr. Harold G. Cohen argued the cause for respondent (Messrs. Wilentz, Goldman & Spitzer, attorneys).
The opinion of the court was delivered by FRITZ, P.J.A.D.
Plaintiff appeals from an order denying her motion to set aside a dismissal previously entered upon her stipulation. While the trial judge did not expressly say so, it is clear that he refused to restore the matter solely because of his conviction that the statute of limitations had run. An understanding of the delicate policy questions involved requires reference to the procedural facts, which do not appear to be the subject of any real dispute.
It is alleged that on January 8, 1972 Louis Kahn maliciously assaulted plaintiff Corinne Miller. On November 30, 1973, 22 months after the alleged assault and well within any two-year statute of limitation, Miller filed her complaint and a summons issued three days later. This summons was never served on defendant because on December 18, 1973 he died. On January 2, 1974, still within the two-year statute of limitation in any event, plaintiff amended her complaint to assert the surviving complaint against the *180 estate. Service on the executor for the estate was accomplished on January 23, 1974. Letters testamentary issued on February 21, 1974, and on March 13, 1974, following the filing of a stipulation extending time to answer, the executor answered by way of a general denial and the assertion, among other affirmative defenses, of N.J.S.A. 3A: 12-5:
To enable executors or administrators to examine into the condition of the estate and to ascertain the amount and value thereof and the debts to be paid therefrom, no action, except for funeral expenses, shall be brought or maintained against executors or administrators within 6 months after letters testamentary or of administration have been granted, as the case may be, unless by special leave of the court wherein the action is brought; and, if such leave is given, no execution shall issue within the said period of 6 months.
It is now of course obvious as a matter of hindsight that plaintiff should have sought "special leave of the court" under the circumstances. However, in order not to offend the statute or its policy of providing the executor with time to get organized, plaintiff instead consented to dismiss her complaint "without prejudice."
On June 7, 1974 plaintiff filed a motion, returnable July 12, 1974 (but, for reasons which do not appear, not heard until September 13, 1974) seeking to have the dismissal vacated. The judge treated the motion as one complicated by "a serious question as to whether or not, in fact, the statute of limitations did run," and declined to vacate the dismissal. He suggested thereafter that the statute question be tested by the filing of a new complaint and an assertion of the statute of limitations as a defense.
In this determination we believe the judge went wide of the mark in two respects. First, if the motion might have been otherwise decided had the limitations question been resolved in favor of plaintiff, then the limitation questions should have been decided on this motion. There seems little reason to subject plaintiff to the further expense and *181 trouble of instituting a new action, especially in the circumstances of this case where her prior conduct, though shortsighted and perhaps somewhat careless, was directed toward compliance with the policy of the law rather than in disregard for the law.
But more to the point, we believe the judge was lured into a misconception of that which was before him. He was not really called upon to decide a pure statute of limitation question, with its corollary issue of waiver and with a consciousness of the "equitable nature" of this doctrine of repose. Lopez v. Swyer, 62 N.J. 267, 275 (1973). Rather, he had before him the problem as to whether a voluntary dismissal is subject to being set aside under R. 4:50-1 for any of the reasons given there, there being no question that the stipulation amounted to "a final * * * proceeding," as that phrase is used in the rule. In the event he had answered that inquiry in the affirmative, as we do below, then he had the further question as to whether that should be done in the circumstances of this case. Plaintiff's failure to make specific reference to the rule  the source of the court's prerogative, if any, in such case  and defendant's emphasis on the statute of limitations unquestionably led the court astray.
Historically, consideration of R. 4:50-1 has resounded with assurances of a purpose of equity and justice, at least with respect to judgments and orders of the court. Greenberg v. Owens, 31 N.J. 402 (1960). The rule has been said to be one with "boundaries * * * as expansive as the need to achieve equity and justice." Court Invest. Co. v. Perillo, 48 N.J. 334, 341 (1966). With regard to the vacation of default judgments, for instance, "our courts have held that great liberality should be allowed," Foster v. New Albany Machine & Tool Co., 63 N.J. Super. 262, 269-270 (App. Div. 1960) and "every reasonable ground for indulgence * * * tolerated to the end that a just result is reached." *182 Marder v. Realty Construction Co., 84 N.J. Super. 313, 319 (App. Div. 1964), aff'd 43 N.J. 508 (1964).
If the purpose of the rule is to be maintained, we see no reason why a voluntary act, as here, intended to be compliant (as far as the statute is concerned), should be less sympathetically treated than a judgment by default which, by definition, involves noncompliance. We hold, therefore, that the fact that a prior dismissal is voluntary does not in and of itself justify a denial of relief under R. 4:50-1. Rather, the court should on each occasion examine the circumstances in order to divine the course most likely to assure justice and equity to and as between all parties, all within guidelines previously set. Bauer v. Griffin, 104 N.J. Super. 530 (Law Div. 1969), aff'd 108 N.J. Super. 414 (App. Div. 1970), certif. den. 56 N.J. 245 (1970).
This is so even though the statute of limitations may have run in the meantime, for if there is good cause within the sound discretion of the trial judge to set aside a prior dismissal, the action will in any event revert to the pleadings in the status prevailing at the time of and just before the dismissal. See State v. Public Service Elec. & Gas Co., 119 N.J. Super. 264 (Ch. Div. 1972). The passage of time and the running of the statute of limitation may well be among the several factors to be considered in the balancing that is required of a judge on such a motion. But these are not necessarily controlling. The rule has long been said to be one of the exercise of "the sound discretion of the trial court, guided by equitable principles," and that exercise of discretion will be sustained absent an abuse thereof. Hodgson v. Applegate, 31 N.J. 29, 37 (1959).
Defendant, claiming in its brief that a voluntary dismissal binds plaintiff irrevocably for all time and in the face of all circumstance, refers to this as "the law of this State for over 150 years," citing for this particular proposition only Murray v. M'Dougall, 3 N.J.L. 512 (Sup. Ct. 1812). We recognize that we, as an intermediate appellate *183 court, are bound by precedent from our court of last resort, In re Education Ass'n of Passaic, Inc., 117 N.J. Super. 255, 261 (App. Div. 1971), certif. den. 60 N.J. 198 (1972).[1] Nonetheless, we are satisfied that this technical one-sentence pronouncement, dissented to by one of the three members of the court and never cited in the officially reported cases in New Jersey in the 164 years which have since transpired, has not survived the enlightened advancement of our rules of practice and procedure generated by the philosophy engendered in the 1948 revision. In such case, it is our privilege and our profound obligation "to divine, as best [we] can, what would be the event of an appeal" from us to our Supreme Court in this case. Roadway Express Inc. v. Director, Div. of Taxation, 50 N.J. 471, 475 (1967), app. dism. 390 U.S. 745, 88 S.Ct. 1443, 20 L.Ed.2d 276 (1968).
We add for the sake of clarity that our determination that an application for relief under R. 4:50-1 should be undertaken in the usual course, despite the fact that the dismissal was voluntary and the statute of limitation may have run, does not imply any view as to whether that relief should or should not be granted. As we observed above, this should *184 be left to the sound discretion of the trial judge, and we propose to leave it that way here.
We reverse the order from which this appeal is taken and remand the matter for further proceedings consistent with the foregoing. Should contested issues of relevant fact develop, the matter should not be determined on affidavits, but a plenary hearing should be afforded. Hallberg v. Hallberg, 113 N.J. Super. 205 (App. Div. 1971). At the conclusion of proceedings below, whether by plenary hearing or otherwise, the determination should be accompanied by adequately detailed findings of fact and conclusions of law. We do not retain jurisdiction. No costs.
NOTES
[1] Only reported cases from the Supreme Court of Judicature appear among the officially reported cases for 1812. 3 N.J.L. The Constitution of 1776, extant in 1812, provided:

IX. Court of appeals
That the governor and council (seven whereof shall be a quorum) be the court of appeals in the last resort in all causes of law as heretofore; and that they possess the power of granting pardons to criminals after condemnation, in all cases of treason, felony or other offenses.
Its jurisdiction extended to matters of equity in 1799, this "court of appeals" was not perpetuated in the Constitution of 1844. Instead there was there created the Court of Errors and Appeals. Art. VI, § II. While it would appear, then, that the Supreme Court of Judicature was not in fact the court of last resort in 1812, we have accorded it that deference here, in the circumstances of there being no reported decisions from the 1776 "court of last resort," so that we may not be thought to have under-evaluated this reported case properly brought to our attention.