770 A.2d 275

DEBORAH G. ALDERISO, PLAINTIFF–APPELLANT, v. THE MEDI-CAL CENTER OF OCEAN COUNTY, INC., A NEW JERSEY CORPORATION, OCEAN HOME CARE, INC., OCEAN HEALTH SYSTEMS, INC., MERIDIAN HEALTHCARE, INC., A NEW JERSEY CORPORATION, CHARLES JARVIS, SHARON WILLIAMS, JAN DELLAPARTE AND MARY KELSA, DEFEN-DANTS–RESPONDENTS,ABC, INC., 1–10, DEFENDANT COR-PORATION(S) WHOSE NAME(S) IS/ARE UNKNOWN, JOHN DOE 1–10 AND JANE ROE 1–10, DEFENDANT(S) WHOSE NAME(S) IS/ARE UNKNOWN, INDIVIDUALLY, DEFEN-DANTS.

Argued January 2, 2001—Decided May 9, 2001.

■■■■■■■■■

■■■■■■■■

■■■■■■■■■■■■

*Charles F. Wetherell* argued the cause for appellant (*Charles F. Wetherell & Associates*, attorneys; *Michael W. Hoffman*, on the brief).

*Lawrence B. Fine*, a member of the Pennsylvania bar, argued the cause for respondents (*Morgan, Lewis & Bockius*, attorneys; *Mr. Fine* and *Robert C. Farley, Jr.*, on the brief).

The opinion of the Court was delivered by

VERNIERO, J.

This appeal involves the provision of the Conscientious Employee Protection Act, *N.J.S.A.* 34:19–1 to –8 (CEPA), that sets forth the limitations period for suits arising out of an employer's alleged retaliatory conduct. The provision states that "[u]pon a violation of any of the provisions of this act, an aggrieved employee or former employee may, within one year, institute a civil action in a court of competent jurisdiction." *N.J.S.A.* 34:19—5. We must determine whether plaintiff's cause of action accrued on the date that she received notice of her termination or on some later date, such as the date of discharge or the first day of unemployment.

■■■■ We hold that when the employer's alleged conduct consists of wrongful termination, the employee's cause of action under CEPA accrues on the date of actual discharge. We interpret that date to mean the last day for which the employee is paid a regular salary or wage. It does not include any subsequent date on which severance, health, or other extended benefits are paid. For computation purposes, the first day to be included in the one-year

limitations period is the day after the date of discharge. Because this is a case of first impression, we apply our holding prospectively. Thus, plaintiff's suit may proceed, notwithstanding that she filed suit a year and one day after the date of discharge.

## I.

For the narrow purposes of this appeal, the facts may be briefly summarized. Plaintiff is a registered nurse. The Medical Center of Ocean County, Inc. (Medical Center) hired plaintiff as a case manager in late 1996. (For convenience, we refer to all defendants as the Medical Center.) On January 14, 1997, the Medical Center informed plaintiff orally that she was being discharged for "poor performance." Plaintiff's supervisor instructed her to return to work the following day to close out her files. Plaintiff did not return to work as requested because, she claims, there was no additional work for her to perform. The Medical Center paid plaintiff her regular salary through and including January 15, 1997.

Following her discharge, plaintiff applied for unemployment compensation. That application was denied on the ground that plaintiff was discharged for misconduct. The appeal tribunal within the New Jersey Department of Labor reversed that denial, concluding that the Medical Center discharged plaintiff because of her disagreements with managers, not because of her alleged misconduct. In its written decision, the tribunal included a finding of fact that the Medical Center employed plaintiff through January 14, 1997, "when she was discharged[.]" In contrast, the Medical Center's personnel records note January 15, 1997, as the date of plaintiff's termination.

Plaintiff filed this action in the Law Division on January 16, 1998, alleging violations of CEPA. Plaintiff also asserts certain common-law claims, but those claims are not relevant to the disposition of this appeal. Plaintiff voluntarily dismissed the CEPA counts, apparently believing that prosecution of those counts would preclude her common-law claims. Plaintiff reassert-

ed her CEPA claims in an amended complaint filed on July 22, 1998. In determining whether the statute of limitations has been satisfied, we consider the date on which plaintiff filed her original complaint, January 16, 1998, to be the operative date of plaintiff's CEPA action. *Miller v. Estate of Kahn,* 140 *N.J.Super.* 177, 182, 355 *A.2d* 702 (App.Div.1976) (observing that, for statute of limitations purposes, when dismissed action is reinstated, it will "revert to the pleadings in the status prevailing at the time of and just before the dismissal").

Plaintiff claims that she was subject to a retaliatory discharge on account of actions concerning five patients to whom plaintiff was assigned as case manager. In respect of the first patient, plaintiff alleges that the Medical Center continued to treat that patient with a catheter, which was no longer medically appropriate, solely to qualify the patient for Medicare. Plaintiff alleges that she was removed as the case manager for that patient when she refused to submit the necessary paperwork to justify continued use of the catheter. In respect of the second patient, plaintiff asserts that she was disciplined when she advocated on that patient's behalf, alleging that the patient had received a poor quality of treatment. Similarly, plaintiff alleges that when a third patient under her care requested a different treatment plan, defendants improperly refused treatment. Concerning a fourth patient, plaintiff alleges that defendants improperly permitted a licensed practical nurse to administer care that was required to be performed by a case manager. Finally, plaintiff alleges that she was improperly reprimanded for spending too much time with the fifth patient.

In addition to those patient-related allegations, plaintiff asserts that the Medical Center violated Medicare regulations by instructing employees to order new supplies rather than use the medical supplies in inventory. Plaintiff also asserts that the Medical Center trained employees to prepare documentation to guarantee Medicare reimbursement without regard to actual patient needs.

The trial court dismissed plaintiff's CEPA claims on statute of limitations grounds. In an unreported opinion, the Appellate Division affirmed, concluding that plaintiff's complaint was untimely because it was filed on January 16, 1998, a year and one day after plaintiff's cause of action accrued. The court determined that plaintiff's claims accrued on January 15, 1997, the date of her discharge, and that the one-year limitations period should be "measured from" January 16, 1997. By that measurement, the panel calculated January 15, 1998, as the one-year filing deadline. The Appellate Division also resolved other questions not pertinent to this appeal. We granted plaintiff's petition for certification, 164 N.J. 189, 752 A.2d 1291 (2000), which focuses solely on the statute of limitations question.

## II.

We have noted in other settings that "[t]he overall objective of CEPA is to protect society by shielding employees who expose illegal or deleterious activities at the workplace." *Estate of Roach v. TRW, Inc.,* 164 *N.J.* 598, 610, 754 *A.2d* 544 (2000); *see also Barratt v. Cushman & Wakefield of N.J., Inc.,* 144 *N.J.* 120, 127, 675 *A.2d* 1094 (1996) (observing that CEPA is remedial legislation intended "to protect employees who report illegal or unethical work-place activities"). Broadly stated, the Legislature has attempted to accomplish the goals of CEPA by designing a statutory scheme that protects employees who complain about activities that they reasonably believe are in violation of some specific statute or regulation, are fraudulent or criminal, or are incompatible with policies in the public interest. *Estate of Roach, supra,* 164 *N.J.* at 610, 754 *A.2d* 544 (citing to *N.J.S.A.* 34:19–3a and *N.J.S.A.* 34:19–3c).

Central to this appeal is CEPA's statute of limitations provision, which states in part: "Upon a violation of any of the provisions of this act, an aggrieved employee or former employee may, within one year, institute a civil action in a court of competent jurisdiction." *N.J.S.A.* 34:19–5. The limitations provision must be read

within the context of *N.J.S.A.* 34:19–3, which forbids an employer from taking "any retaliatory action" against an employee who exposes any of the improper activities delineated in the statute.

The statute defines "retaliatory action" to mean "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." *N.J.S.A.* 34:19–2e. The statute does not define "discharge." The question, then, that we must resolve is whether, within the meaning of CEPA, plaintiff's discharge occurred on (1) the date on which she received notice of termination, (2) the last day for which she was actually paid, or (3) the first day on which she was unemployed. If the date of discharge were interpreted to mean either of those first two dates, plaintiff's suit would be untimely. If the date of discharge were interpreted to encompass the first full day of unemployment, *i.e.*, the day after the last day for which plaintiff was paid, her filing would be within the one-year limitations period.

### A.

We first consider whether the date on which plaintiff received oral notice of her termination qualifies as the date of discharge. The Medical Center advances two reasons to support its contention that plaintiff's date of discharge was January 14, 1997, the date on which she received notice of her termination. First, the appeal tribunal within the Department of Labor stated in its findings of fact that the Medical Center employed plaintiff "from 10/8/96 until 1/14/97 when she was discharged[.]" Second, noting that plaintiff did not return to work after receiving the oral notice, the Medical Center argues that the date of notice essentially served as plaintiff's date of discharge.

As a general rule, an appellate court is bound to the factual determinations made by the trier of fact. *Close v. Kordulak Bros.*, 44 *N.J.* 589, 210 *A.*2d 753 (1965). That rule, however, is not absolute. "[W]here the focus of the dispute is not on credibility but, rather, alleged error in the [fact finder's] evaluation of the

underlying facts and the implications to be drawn therefrom, our function broadens somewhat." *Manzo v. Amalgamated Indus. Union Local 76B,* 241 *N.J.Super.* 604, 609, 575 *A.*2d 903 (App. Div.), *certif. denied,* 122 *N.J.* 372, 585 *A.*2d 379 (1990). Moreover, an appellate court is always free "to resolve purely legal questions[.]" *Greenwood v. State Police Training Ctr.,* 127 *N.J.* 500, 513, 606 *A.*2d 336 (1992).

Applying those tenets, we are satisfied that we are not bound by the finding of the appeal tribunal that plaintiff was discharged as of the date she received oral notice of termination. The tribunal's conclusion in that regard was not based on credibility determinations, but rather represents an evaluation of an underlying fact, which is clearly reviewable by an appellate court. *Manzo, supra,* 241 *N.J.Super.* at 609, 575 *A.*2d 903. Moreover, the tribunal's finding is belied by the unemployment insurance form executed by the Medical Center's personnel coordinator and other records indicating January 15, 1997, as plaintiff's date of discharge. Most importantly, the dispute concerning plaintiff's date of discharge represents a legal dispute, not a question of fact, and is thus within our purview to resolve.

■ Similarly, the fact that plaintiff did not return to work after receiving the oral notice does not alter the date of discharge as indicated in her personnel file. The record is undisputed that plaintiff was paid through and including January 15, 1997. Our task is to interpret the statute sensibly, attributing ordinary and logical meaning to the statute's text. *Lesniak v. Budzash,* 133 *N.J.* 1, 14, 626 *A.*2d 1073 (1993). In so doing here, we conclude that the date of discharge means the last day for which an employee is paid her regular wage or salary, notwithstanding her absence from work on that date.

For clarity, we also note that the date of discharge for limitations purposes does not include any subsequent date on which severance, health, or other extended benefits are paid. *Bonham v. Dresser Indus., Inc.,* 569 *F.*2d 187, 191–92 (3d Cir.1977) (observing that timeliness of employee's discrimination action would not

be judged by date of payment of extended benefits, but rather on earlier date of employee's last day of work), *cert. denied,* 439 *U.S.* 821, 99 *S.Ct.* 87, 58 *L.Ed.*2d 113 (1978); *Monroe v. Penn–Dixie Cement Corp.,* 335 *F.Supp.* 231, 234 (N.D.Ga.1971) ("The paid vacation time does not change the date of plaintiff's discharge. A vacation with pay is, in effect, only additional pay for work already done."); *Parker v. Cadillac Gage Textron, Inc.,* 214 *Mich.App.* 288, 542 *N.W.*2d 365, 366 (1995) ("Subsequent severance or vacation pay does not affect the date of discharge.").

We also consider two decisions of the United States Supreme Court that suggest a contrary conclusion, namely, that the date of an employer's notice to the employee should serve as the applicable trigger date for the statute of limitations in wrongful discharge cases. Those decisions are *Delaware State College v. Ricks,* 449 *U.S.* 250, 101 *S.Ct.* 498, 66 *L.Ed.*2d 431 (1980), and *Chardon v. Fernandez,* 454 *U.S.* 6, 102 *S.Ct.* 28, 70 *L.Ed.*2d 6 (1981).

In *Ricks,* the plaintiff was denied tenure by his employer in June 1974, but continued teaching until June 1975 under the terms of a one-year contract. *Ricks, supra,* 449 *U.S.* at 252–54, 101 *S.Ct.* at 501–02, 66 *L.Ed.*2d at 436–37. The plaintiff filed a discrimination complaint with the Equal Employment Opportunity Commission and later filed suit in the United States District Court. The employer moved to dismiss the plaintiff's complaint, asserting that it was filed outside of the applicable limitations period. The Supreme Court agreed, concluding that the limitations period commenced "at the time the tenure decision was made and communicated to [the plaintiff]. That is so even though one of the *effects* of the denial of tenure-the eventual loss of a teaching position-did not occur until later." *Id.* at 258, 101 *S.Ct.* at 504, 66 *L.Ed.*2d at 439–40 (footnote omitted).

Similarly, in *Chardon v. Fernandez,* the Court held that the applicable statute of limitations was triggered when the plaintiffs received notice of termination by their employer. The plaintiffs, non-tenured administrators, were notified prior to June 18, 1977, that their respective positions would be terminated at a specified

future date.  454 *U.S.* at 6–7, 102 *S.Ct.* at 28, 70 *L.Ed.*2d at 8. The plaintiffs filed suit under 42 *U.S.C.A.* § 1983 on June 19, 1978. The applicable limitations period provided for a one-year time frame within which to file suit.  The Court found that the plaintiffs' suits were untimely, concluding that *Chardon* was indistinguishable from *Ricks*.  The Court reasoned that "in each case, the operative decision was made-and notice given-in advance of a designated date on which employment terminated."  *Id.* at 8, 102 *S.Ct.* at 29, 70 *L.Ed.*2d at 8.

In our view, *Ricks* and the federal decisions applying the holding in that case are inapplicable to the case at hand.  First, the complaint filed in *Ricks* focused almost exclusively on the "decision to deny [the plaintiff] tenure," 449 *U.S.* at 254–55, 101 *S.Ct.* at 502, 66 *L.Ed.*2d at 437, and contained no corresponding allegation of discrimination in respect of the plaintiff's subsequent termination.  That fact was highlighted by the Court itself, *id.* at 257, 101 *S.Ct.* at 503–04, 66 *L.Ed.*2d at 439, and thus distinguishes *Ricks* from the present case.

■  Second, in respect of both *Ricks* and *Chardon,* although we are guided by the Supreme Court's analyses of the federal statutes at issue in those cases, we must apply our State jurisprudence in the present circumstance.  "Although federal decisional law may serve to guide us in our resolution of New Jersey issues, 'we bear ultimate responsibility for the safe passage of our ship.' " *State v. Cooke,* 163 *N.J.* 657, 670, 751 *A.*2d 92 (2000) (quoting *State v. Hempele,* 120 *N.J.* 182, 196, 576 *A.*2d 793 (1990)).  In interpreting CEPA in accordance with its plain language, we are satisfied that the date of discharge represents the appropriate accrual date, not the date on which an employee receives notice of termination. We agree with Justice Stevens that

> [t]he most sensible rule would provide that the date of discharge establishes the time when a cause of action accrues and the statute of limitations begins to run. Prior to that date, the allegedly wrongful act is subject to change; more importantly, the effective discharge date is the date which can normally be identified with the least difficulty or dispute.... Both the interest in harmonious working relations

during the terminal period of the employment relationship, and the interest in certainty that is so important in litigation of this kind, support this result. [*Ricks, supra,* 449 *U.S.* at 265, 266–67, 101 *S.Ct.* at 508, 66 *L.Ed.*2d at 444, 445 (Stevens, J., dissenting) (footnotes omitted).]

See also *Holmin v. TRW,* 330 *N.J.Super.* 30, 37–46, 748 *A.*2d 1141 (App.Div.2000) (explaining why *Ricks—Chardon* line of cases is inapplicable to implementation of six-year statute of limitations found at *N.J.S.A.* 2A:14–1), *aff'd o.b.,* 167 *N.J.* 205, 770 *A.*2d 283 (2001).

### B.

Having concluded that plaintiff's date of discharge establishes the time when plaintiff's cause of action accrued under CEPA, we next consider how to measure the statute's one-year limitations period. Plaintiff urges that we compute the one-year period by excluding January 16, 1997, the first day of her unemployment. We disagree. We find nothing in the statute or rules of court that expressly authorizes an employee to exclude the day after the accrual date in computing the one-year window within which to commence an action.

"It was early established in this State, in accordance with the prevailing view elsewhere, that in computing time under the statute of limitations the day on which the cause of action accrued is not to be counted." *Poetz v. Mix,* 7 *N.J.* 436, 445, 81 *A.*2d 741 (1951). *See also Patterson v. Monmouth Reg'l High Sch. Bd. of Educ.,* 222 *N.J.Super.* 448, 451, 537 *A.*2d 696 (App.Div.1987) ("Under the uniform method of calculation applicable to legal matters in New Jersey the date of the act or event from which a designated period begins to run is not included in determining a time limitation."), *certif. denied,* 110 *N.J.* 183, 540 *A.*2d 180 (1988). Applying that uniform method to plaintiff's case, we would exclude the date of discharge from the computation of the one-year statute of limitation and would thus include the first day after that date. Hence, we agree with the Appellate Division that the period "within one year" of plaintiff's date of discharge encompasses January 16, 1997, through and including January 15, 1998. Under

that measurement, a complaint filed on January 16, 1998, would be outside the applicable limitations window by one day.

In furtherance of her position, plaintiff relies on *Keelan v. Bell Communications Research*, 289 *N.J.Super.* 531, 674 *A.*2d 603 (App.Div.1996). That reliance is misplaced. In *Keelan*, the plaintiff was notified on September 23, 1992, that his job would be eliminated effective December 2, 1992. He filed suit under CEPA on November 30, 1993. The Appellate Division held that the one-year limitations period was triggered not on the date of notice, but on the date of termination, and, therefore, the plaintiff's complaint was timely filed.

Although *Keelan* supports the proposition that an employee's cause of action for wrongful termination under CEPA accrues on the date of discharge, not on the earlier date of notice, it does not support plaintiff's other argument in respect of the computation of time. That is so because the employee in *Keelan* undisputedly filed his action within one year from the date of his discharge. The *Keelan* court's observation that the statute of limitations "commenced to run on December 3, 1992, when plaintiff's employment with defendant ceased," *id.* at 535–36, 674 *A.*2d 603, is consistent with our conclusion that for computation purposes, the first day to be included in the limitations period is the day after the date of discharge.

## III.

There remains the question whether we should apply our holding on a prospective basis only. Briefly stated, "[p]rospective application is appropriate when a decision establishes a new principle of law by overruling past precedent or by deciding an issue of first impression." *Montells v. Haynes*, 133 *N.J.* 282, 295, 627 *A.*2d 654 (1993). In determining whether to apply a rule prospectively, "we must weigh, among other things, 'whether retroactive applications could produce substantial inequitable results.'" *Cox v. RKA Corp.*, 164 *N.J.* 487, 514, 753 *A.*2d 1112 (2000) (quoting *Montells, supra*, 133 *N.J.* at 295, 627 *A.*2d 654).

This is a case of first impression for the Court. In that context, plaintiff's view that her action accrued on the first day of her unemployment, which should be excluded from the computation of the applicable limitations period, represents a plausible interpretation of the law. The sting of an employer's wrongful discharge is not truly felt until the employee is actually unemployed. Under that circumstance, we understand why plaintiff would have considered the CEPA accrual date to be the first day of unemployment rather than the date of discharge.

We recently observed that prospective application of the Court's holding may be warranted when an issue is one of first impression and a plaintiff "reasonably relie[s] on a plausible, although incorrect, interpretation of the law." *SASCO 1997 NI, LLC v. Zudkewich*, 166 *N.J.* 579, 594, 767 *A*.2d 469 (2001). Such is the case here. We note also that the Medical Center will experience no remarkable prejudice by having to defend against a suit that would otherwise be considered untimely by only one day. On balance, we conclude that prospective application of our holding provides the most equitable disposition.

Accordingly, for this suit, and similar suits already commenced or on appeal by other plaintiffs, a cause of action for wrongful discharge under CEPA shall be considered to have accrued on the employee's first day of unemployment. For actions filed after the date of this opinion, the applicable accrual date shall be the employee's date of discharge. As noted, that date is defined as the last day for which the employee is paid a regular salary or wage, and does not encompass any subsequent date on which severance, health, or other extended benefits are paid.

## IV.

The judgment of the Appellate Division dismissing plaintiff's CEPA action on statute of limitation grounds is reversed.

*For reversal*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA and ZAZZALI—7.

*Opposed*—None.