627 A.2d 654

JESSICA MONTELLS, PLAINTIFF–APPELLANT, v. RONALD HAYNES, ROBERT WITTY, ROBERT SANDLER, AMERICAN INTERNATIONAL GROUP, INC., AMERICAN INTERNATIONAL ADJUSTMENT COMPANY, INC., DEFENDANTS–RESPONDENTS, AND VINCENT SCARDA, MAURICE R. GREENBERG, XYZ CORPORATION, AND JOHN DOE, DEFENDANTS.

Argued March 29, 1993—Decided July 27, 1993.

*Clifford A. Herrington* argued the cause for appellant (*Margulies, Wind, Herrington & Katz,* attorneys; *Robert E. Margulies,* of counsel).

*Michael J. Sheehan,* a member of the Illinois bar, argued the cause for respondents Robert Witty, Robert Sandler, American International Group, Inc., and American International Adjustment Company, Inc. (*Donington, Leroe, Salmond, Luongo, Ronan, Connell & Stroumtsos,* attorneys).

*Robert Drewes* argued the cause for respondent Ronald Haynes (*Psak & Parker,* attorneys).

*Nadine Taub* and *Michelle Joy Munsat* submitted a brief on behalf of *amicus curiae* NOW–NJ.

*Nancy Erika Smith, Tara Levy,* and *Patricia Breuninger* submitted a brief on behalf of *amicus curiae* New Jersey Employee Lawyers Association (*Smith, Mullin & Kiernan* and *Breuninger & Hansen,* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

This appeal requires that we determine the appropriate statute of limitations applicable to sexual-harassment actions under *N.J.S.A.* 10:5-13, the Law Against Discrimination (LAD). Because LAD does not contain its own statute of limitations for Superior Court actions, the issue is whether the six-year general statute of limitations, *N.J.S.A.* 2A:14-1,[1] or the two-year personal-injury statute, *N.J.S.A.* 2A:14-2,[2] should apply. The case also requires that we decide whether a single statute of limitations should apply to all LAD claims, no matter how characterized, and whether our decision should apply prospectively.

The case arises from a sexual-harassment claim filed by plaintiff, Jessica Montells, against her supervisor, Ronald Haynes; her employer, American International Adjustment Company, Inc. (AIA); its parent company; and various company managers.

In her complaint, plaintiff alleges various personal-injury claims and a LAD claim. The Law Division dismissed all the claims as barred by the two-year personal-injury statute of limitations, *N.J.S.A.* 2A:14-2. The Appellate Division found that the LAD claim was more like a personal-injury claim than one based on a violation of contractual rights. 258 *N.J.Super.* 563, 610 *A.*2d 898 (1992). Applying its decision retroactively, it affirmed the dis-

---

[1] Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this Title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

This section shall not apply to any action for breach of any contract for sale governed by section 12A:2–725 of the New Jersey Statutes.

[2] Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued.

missal. We granted certification, 130 *N.J.* 601, 617 *A.*2d 1223 (1992).

After carefully considering the purposes of LAD and of statutes of limitations, we conclude that a single statute of limitations should apply to all LAD claims. Finding that injuries under LAD are most like personal-injury claims, we further conclude that the two-year personal-injury statute of limitations should apply. We recognize that until today, the applicable statute of limitations has been unclear. In the interest of justice, we believe that our decision should apply prospectively only. The result is that plaintiff's LAD claim is not time-barred. Consequently, we affirm in part, reverse in part, and remand to the Law Division.

-I-

Plaintiff worked for AIA as a litigation examiner from September 1986 until May 13, 1987. During that time Haynes allegedly made numerous lewd comments to her and touched her in sexually-suggestive ways. Plaintiff asserts that she complained to management officials, but that the company did not take any corrective action. According to plaintiff, the sexually-hostile environment resulted in her wrongful constructive discharge. She resigned on April 29, 1987, and left work the following week. AIA paid her salary through May 13, 1987. Plaintiff accepted a similar position with another company at higher pay, starting on May 18, 1987.

More than two years later, on May 23, 1989, plaintiff filed her complaint in the Superior Court. In count one, she alleged that Haynes' behavior had constituted sexual harassment that had created a hostile work environment in violation of LAD. In the remaining counts, she asserted seven common-law offenses: breach of covenant of good faith resulting in constructive discharge, intentional infliction of emotional distress, negligent and intentional interference with her future economic opportunity, creation of a hostile work environment resulting in constructive discharge, and both negligent and intentional assault and battery.

The common-law claims are premised on the same facts as the LAD claims. For each claim, she seeks damages for the same injuries: "[C]ompensatory damages, damages for pain, suffering and humiliation, punitive damages, attorney fees, interest and costs and such other relief as the Court deems just and proper."

Two defendants, Vincent Scarda and Maurice Greenberg, were dismissed from the case for failure of service and for lack of personal jurisdiction respectively. The remaining defendants moved for summary judgment on the grounds that the two-year statute of limitations for personal-injury actions barred the complaint.

The Law Division determined that plaintiff's cause of action had accrued no later than May 13, 1987, the last day for which she was paid. Accordingly, the court dismissed the common-law counts, implying that all those counts were subject to the two-year statute of limitations. Characterizing the LAD claim as a statutory, not a common-law, cause of action, the court concluded that the claim was governed by the six-year statute of limitations. In reaching that result, the Law Division relied on our then-recent decision, *Shaner v. Horizon Bancorp*, 116 *N.J.* 433, 561 *A.*2d 1130 (1989), which held that a LAD claim was essentially equitable in nature and that a LAD claimant is not entitled to a trial by jury. Because the purpose of a LAD claim is to provide equitable relief rather than to vindicate personal injuries, the Law Division in the present case concluded that the six-year statute should apply.

Thereafter, the Legislature amended LAD to provide for a jury trial in LAD cases. *L.*1990, *c.* 12, § 2 (codified at *N.J.S.A.* 10:5–13). The amendment also provided that "[a]ll remedies available in common law tort actions shall be available to prevailing plaintiffs. These remedies are in addition to any legal or equitable relief provided by this act or any other statute." In another amendment, the Legislature specified the harm suffered by both the people and the State from the "personal hardships" caused by discrimination:

The Legislature further finds that because of discrimination, people suffer personal hardships, and the State suffers a grievous harm. The personal hardships include: economic loss; time loss; physical and emotional stress; and in some cases severe emotional trauma, illness, homelessness or other irreparable harm resulting from the strain of employment controversies; relocation, search and moving difficulties; anxiety caused by lack of information, uncertainty, and resultant planning difficulty; career, education, family and social disruption; and adjustment problems, which particularly impact on those protected by this act. Such harms have, under the common law, given rise to legal remedies, including compensatory and punitive damages. The Legislature intends that such damages be available to all persons protected by this act and that this act shall be liberally construed in combination with other protections available under the laws of this State.

[*L.*1990, *c.* 12, § 1.]

Guided by the intervening legislative amendment, the Appellate Division concluded that the two-year statute of limitations could apply to all of plaintiff's claims. Consequently, it remanded the matter to the Law Division. On remand, that court concluded that all the claims were "primarily personal in nature," and that the two-year statute should apply to those claims. Declining to apply its decision prospectively, the Law Division granted summary judgment for defendants.

The Appellate Division affirmed, reasoning that for statute-of-limitation purposes, "the gravamen of plaintiff's complaint is injury to the person." 258 *N.J.Super.* at 567, 610 *A.*2d 898. It then found that the common-law actions were barred by the two-year statute. Turning to the LAD claims, the court found "her claim once more is for personal injuries arising out of the sexual harassment and sexual discrimination under LAD." *Id.* at 568–69, 610 *A.*2d 898. The court wrote: "We find nothing in the LAD to express a legislative intent that for personal injuries sustained as a result of discrimination under LAD that the limitation for bringing such an action should be anything other than the standard statute of limitation for personal injury claims." *Id.* at 571–72, 610 *A.*2d 898 (citation omitted). Declining to waive the general rule that judicial decisions should apply retroactively, it affirmed the dismissal of the complaint. Plaintiff sought certification only on the dismissal of her LAD claim.

-II-

■ First, we consider whether a single statute of limitations should apply to all LAD claims. Depending on the allegations of a complaint, an analysis of the injuries and the requested remedy could lead to the application of different statutes of limitations to various claims arising out of a single set of facts. So disparate an outcome would not further the objectives of LAD.

Originally enacted in 1945, LAD provided for the filing of complaints with the Division Against Discrimination (*L.*1945, *c.* 169, § 12), which was replaced by the Division on Civil Rights (DCR) (*L.*1960, *c.* 59, p. 491, § 3) (codified at *N.J.S.A.* 10:5–5.1). The Legislature has amended the law several times, broadening its scope and increasing available remedies. In 1977, the Legislature amended the findings and declaration of the statute to underscore its opposition to discrimination:

> The Legislature finds and declares that practices of discrimination against any of its inhabitants, because of race, creed, color, national origin, ancestry, age, sex, marital status, liability for service in the Armed Forces of the United States, or nationality, are a matter of concern to the government of the State, and that such discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and foundation of a free democratic State....
>
> [*P.L.*1977, *c.* 96, § 1 (codified at *N.J.S.A.* 10:5–3).]

In 1991, the Legislature amended the statute to protect against discrimination because of "affectional or sexual orientation," *L.*1991, *c.* 519, § 1, and further amended the statute in 1992 to prevent discrimination because of "familial status," *L.*1992, *c.* 146, § 1. A 1979 amendment provides for a right of action in the Superior Court, in addition to the right to an administrative hearing before the DCR. *L.*1979, *c.* 404, § 1 (codified at *N.J.S.A.* 10:5–13). The amendment, however, neither addressed the right to trial by jury nor identified the appropriate statute of limitations. As previously indicated, *supra* at 287, 627 *A.*2d at 656, after our decision in *Shaner,* the Legislature expressly recognized the right to a jury trial. Even today, LAD's period of limitations applies only to a proceeding before the DCR. It requires that such a proceeding be filed within 180 days of the act of discrimina-

tion. *N.J.S.A.* 10:5–18. That limitation does not apply to Superior Court actions. *Nolan v. Otis Elevator Inc.,* 197 *N.J.Super.* 468, 473, 485 *A.*2d 312 (App.Div.1984), *rev'd on other grounds,* 102 *N.J.* 30, 505 *A.*2d 580, *cert. denied,* 479 *U.S.* 820, 107 *S.Ct.* 84, 93 *L.Ed.*2d 38 (1986). To discern the legislative intent on the applicable statute of limitations in a judicial action, we must look beyond the words of the statute.

As in the past,

> [w]e begin by recognizing that the clear public policy of this State is to abolish discrimination in the work place. Indeed, the overarching goal of the Law is nothing less than the eradication "of the cancer of discrimination." ... Employment discrimination is not just a matter between employer and employee. The public interest in a discrimination-free work place infuses the inquiry.
>
> [*Fuchilla v. Layman,* 109 *N.J.* 319, 334–35, 537 *A.*2d 652 (citation omitted), *cert. denied,* 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988).]

The efficient prosecution of claims is essential to the elimination of discrimination from the workplace. Confusion over the applicable statute of limitations is inefficient. As the United States Supreme Court has written in connection with the enforcement of federal anti-discrimination statutes,

> practical considerations help to explain why a simple, broad characterization of all § 1983 claims best fits the statute's remedial purpose. The experience of the courts that have predicated their choice of the correct statute of limitations on an analysis of the particular facts of each claim demonstrates that their approach inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of § 1983. Almost every § 1983 claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations....
>
> . . . .
>
> [T]he legislative purpose to create an effective remedy for the enforcement of federal civil rights is obstructed by uncertainty in the applicable statute of limitations, for scarce resources must be dissipated by useless litigation on collateral matters.
>
> [*Wilson v. Garcia,* 471 *U.S.* 261, 272–73, 275, 105 *S.Ct.* 1938, 1945–46, 85 *L.Ed.*2d 254, 264, 266 (1985) (footnotes omitted).]

*See also Goodman v. Lukens Steel Co.,* 482 *U.S.* 656, 661, 107 *S.Ct.* 2617, 2621, 96 *L.Ed.*2d 572, 581 (1987), (finding single statute of limitations applies to § 1981 claims).

Plaintiff's belated attempt to assert a claim for lost wages highlights the wisdom of a single statute of limitations for LAD claims. Perhaps because she started within one week a similar job at higher pay, plaintiff did not include a lost-wage claim in her complaint. On appeal, however, she has tried to assert such a claim, apparently to support her argument for application of the six-year statute of limitations. The mere fact that plaintiff belatedly seeks lost wages should not prevent the application of a single statute of limitations to her LAD claim.

Uniformity of application and predictability of results promote the prompt and efficient resolution of LAD claims. A single statute of limitations, by investing the prosecution of discrimination claims with uniformity and predictability, helps to fulfill LAD's mission. It also will reduce unnecessary litigation over the proper characterization of a claim. Finally, a single statute will avoid concerns about the proper characterization of the injuries caused by discrimination, injuries that by their very nature are often tragically personal and emotional.

-III-

We now turn to the determination of the proper statute of limitations for all LAD claims. Our focus is on the nature of the injury, not the underlying legal theory of the claim. *Heavner v. Uniroyal, Inc.*, 63 *N.J.* 130, 145, 305 *A.*2d 412 (1973); *Burns v. Bethlehem Steel Co.*, 20 *N.J.* 37, 45, 118 *A.*2d 544 (1955).

The question becomes whether injuries under LAD are more like an "injury to the person" under *N.J.S.A.* 2A:14–2 or like injuries under *N.J.S.A.* 2A:14–1, specifically those arising from breach of contract or from "any tortious injury to the rights of another not stated in sections 2A:14–2. . . ." In separating "injury to the person" from "tortious injury to the rights of another," the Legislature essentially distinguished personal injuries involving physical or emotional harm from those involving economic harm. Accordingly, courts have viewed "tortious injury to the rights of another" as applying primarily to actions for economic loss. *See,*

e.g., *Grunwald v. Bronkesh,* 254 *N.J.Super.* 530, 534, 604 *A.*2d 126, *rev'd on other grounds,* 131 *N.J.* 483, 621 *A.*2d 459 (1993) (legal malpractice is tortious injury to rights of another); *P.T. & L. Constr. Co. v. Madigan & Hyland, Inc.,* 245 *N.J.Super.* 201, 584 *A.*2d 850 (App.Div.1991) (malpractice claim for improper engineering design governed by *N.J.S.A.* 2A:14–1), *cert. denied,* 126 *N.J.* 330, 598 *A.*2d 888 (1991); *Lloyd v. Borough of Stone Harbor,* 179 *N.J.Super.* 496, 514, 432 *A.*2d 572 (Ch.Div.1981) (holding claim of employment discrimination in hiring based on federal and state constitutions is for economic damages to property right); *Brown v. College of Medicine & Dentistry,* 167 *N.J.Super.* 532, 401 *A.*2d 288 (Law Div.1979) (claim for lost wages in wrongful-discharge action fell under "tortious injury to the rights of another"); *Canessa v. J.I. Kislak, Inc.,* 97 *N.J.Super.* 327, 352, 235 *A.*2d 62 (Law Div.1967) (holding that six-year statute of limitations applied because "insofar as plaintiffs' claim is based on the appropriation of their likeness and name for defendant's commercial benefit, it is an action for invasion of their 'property' rights and not one for 'injury to the person.' ").

We gain further insight from the recent amendment to LAD, which identifies the relevant injuries as including economic and time loss; physical and emotional distress; severe emotional or physical trauma; homelessness; anxiety; career, education, family, and social disruption; and adjustment problems. With the exception of economic and time loss, those injuries at common law would be governed by the two-year personal-injury statute of limitations. We conclude that the statute of limitations for personal-injury claims more closely comports with the purpose of LAD.

 The two-year statute also comports with the underlying purposes of statutes of limitations, with the decisions of other courts, and with the remedial purpose of LAD in rooting out discrimination. Statutes of limitations are essentially equitable in nature, promoting the timely and efficient litigation of claims. *Ochs v. Federal Ins. Co.,* 90 *N.J.* 108, 447 *A.*2d 163 (1982). They

"spare courts from litigating stale claims," *Farrell v. Votator Div.*, 62 *N.J.* 111, 115, 299 *A.*2d 394 (1973); penalize delay, and provide repose, *Rosenau v. City of New Brunswick*, 51 *N.J.* 130, 136, 238 *A.*2d 169 (1968). As the United States Supreme Court has written: "Just determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost. In compelling circumstances, even wrongdoers are entitled to assume that their sins may be forgotten." *Wilson, supra,* 471 *U.S.* at 272, 105 *S.Ct.* at 1944, 85 *L.Ed.*2d at 264.

Evidence of discrimination, especially proof of sexual discrimination, is vulnerable to the passage of time. With racial slurs, insults about sexual orientation, or sexually-suggestive remarks, the proof generally depends on testimonial evidence. Depending on the memory and availability of witnesses, that testimony can dissipate or even disappear over time. Sexual harassment, which often occurs in private, presents special problems. A sexual-harassment claim often implicates the credibility of both the accuser and the accused, requiring a decision about who is telling the truth. That decision becomes harder with the passage of time. Fairness to the accuser, the accused, and to the judicial system require a timely adjudication of discrimination claims. Thus, both fairness and efficiency support a two-year statute of limitations.

When considering the federal civil rights law, 42 *U.S.C.A.* § 1981, which also applies to claims of discrimination, the United States Supreme Court has concluded:

Section 1981 has a much broader focus than contractual rights.... That § 1981 has far-reaching economic consequences does not change this conclusion [that the personal injury statute of limitations should apply], since such impact flows from guaranteeing the personal right to engage in economically significant activity free from racially discriminatory interference.

[*Goodman, supra,* 482 *U.S.* at 661–62, 107 *S.Ct.* at 2621, 96 *L.Ed.*2d at 582.]

Although LAD similarly vindicates economic rights and some rights that sound in contract, the statute strikes directly at conduct that injures the personhood of another. A discrimination claim cuts most deeply at the personal level.

Other jurisdictions, when deciding the appropriate statute of limitations, generally have selected periods of three years or less. Although they may reach that decision by different analytical paths, those courts concur that civil-rights complaints should be timely filed. For instance, some states have adopted the federal standard or have applied their own personal-injury statute of limitations to discrimination suits. See *Leonard v. Corrections Cabinet*, 828 *S.W.*2d 668 (Ky.Ct.App.1992) (one-year personal-injury period); *Lewis v. Lockheed Shipbuilding & Constr. Co.*, 36 *Wash.App.* 607, 676 *P.*2d 545 (1984) (three-year personal-injury/injury to intangible-property statute of limitations applied to claim under state anti-discrimination law). Other states have specific statutes of limitations for liabilities created by statute. See *Hullinger v. Ryder Truck Rental*, 548 *So.*2d 231 (Fla.1989) (age-discrimination claim controlled by four-year period that applies to liabilities created by statute); *Meek v. Michigan Bell Telephone Co.*, 193 *Mich.App.* 340, 483 *N.W.*2d 407 (1991) (three-year period for liabilities created by statute); *Murphy v. American Home Products Corp.*, 58 *N.Y.*2d 293, 461 *N.Y.S.*2d 232, 448 *N.E.*2d 86 (1983) (applying three-year statute of limitations to claims under Human Rights Law inasmuch as liability is created by statute). *But see Kentucky Comm'n on Human Rights v. City of Owensboro*, 750 *S.W.*2d 422 (Ky.1988) (five-year statute of limitations for statutory claims); *Morris v. Kaiser Eng'rs*, 14 *Ohio St.*3d 45, 471 *N.E.*2d 471 (1984) (six-year period for liabilities created by statute). Still other states interpret their laws to require filing first with the state human-rights commission before filing suit in court. Thus, the effective statute of limitations in those cases is the administrative period, usually 180 days to six months. *Quicker v. Colorado Civil Rights Comm'n*, 747 *P.*2d 682 (Colo.App.1987); *Henrickson v. Pain Control & Rehabilitation Inst. of Georgia, Inc.*, 205 *Ga.App.* 843, 424 *S.E.*2d 27 (1992); *Milwaukee County v. State Labor & Industry Review Comm'n*, 113 *Wis.*2d 199, 335 *N.W.*2d 412 (App.1983).

Finally, we note that a two-year statute more closely approximates the 180–day period of limitations provided by the Legisla-

ture for the filing of claims with the Division on Civil Rights. To this extent, our decision further complies with public policy as declared by the Legislature. That body remains free, if it is so inclined, to provide a separate statute of limitations with a different period of limitations for a civil action based on a discrimination claim.

-IV-

The final issue is whether our decision should follow the general rule of retroactive application or should apply prospectively only. Prospective application is appropriate when a decision establishes a new principle of law by overruling past precedent or by deciding an issue of first impression. *Coons v. American Honda Motor Co.*, 96 *N.J.* 419, 427, 476 *A.*2d 763 (1984), *cert. denied*, 469 *U.S.* 1123, 105 *S.Ct.* 808, 83 *L.Ed.*2d 800 (1985) (*Coons II*). Together with those considerations, we must also weigh whether retroactivity furthers the underlying purpose of the rule and whether retroactive applications could produce substantial inequitable results. *Coons II, supra,* 96 *N.J.* at 427, 476 *A.*2d 763.

As *Coons II* states, our case law roughly parallels that of the United States Supreme Court on the issue of prospectivity. 96 *N.J.* at 428, 476 *A.*2d 763. In reversing a decision that followed the general rule of retrospective effect, *Coons II* applied "principles drawn from our own state court decisions as well as from United States Supreme Court cases." *Id.* at 425, 476 *A.*2d 763. *Coons II* recognized that *Chevron Oil Co. v. Huson,* 404 *U.S.* 97, 92 *S.Ct.* 349, 30 *L.Ed.*2d 296 (1971), best typified federal prospectivity analysis. Just last month, however, the United States Supreme Court cast doubt on the continuing vitality of *Chevron*'s prospectivity analysis in cases of federal law. *Harper v. Virginia Department of Taxation,* —— *U.S.* ——, 113 *S.Ct.* 2510, 125 *L.Ed.*2d 74 (1993). Whatever path that Court may follow, we believe that in an appropriate case a purely prospective application may provide the fairest and most equitable disposition.

When plaintiff filed her complaint in May 1989, few cases had considered the issue of the appropriate statute of limitations under LAD. The most relevant authority was a Law Division opinion that characterized a claim of sexual discrimination in employment as an injury to "property rights," thereby justifying the application of the six-year statute of limitations. See *Leese v. Doe*, 182 *N.J.Super.* 318, 321, 440 *A.*2d 1166 (1981). *Leese* relied on *Davis v. U.S. Steel Supply*, 581 *F.*2d 335, 341 (3d Cir.1978), which held that courts should apply the state statute of limitations for contract actions to § 1981 claims. *Leese, supra*, 182 *N.J.Super.* at 321, 440 *A.*2d 1166. In 1987, however, *Goodman, supra*, 482 *U.S.* at 661–62, 107 *S.Ct.* at 2621, 96 *L.Ed.*2d at 582, determined that a state's two-year personal-injury statute should apply to a § 1981 claim based on racial discrimination in employment. In effect, *Goodman* overturned *Davis*, thereby calling *Leese* into question. *See Goodman v. Lukens Steel Co.*, 777 *F.*2d 113, 120 (3d Cir.1985) ("The rationale in *Davis* cannot co-exist with *Wilson [v. Garcia ]*, and accordingly does not bind us here."). Furthermore, in *Nolan, supra*, 102 *N.J.* 30, 505 *A.*2d 580, we accepted without analysis the six-year statute of limitations and held in an age-discrimination case under ERISA that ERISA's two-year statute of limitations preempted LAD's six-year statute.

Before plaintiff filed her complaint, the United States District Court for the District of New Jersey had divided on the issue. The earliest case, *Skadegaard v. Farrell*, 578 *F.Supp.* 1209 (D.N.J. 1984), involved a claim for sexual harassment and sexual discrimination under LAD and also under 42 *U.S.C.A.* §§ 1983, 1985, and 1986. *Skadegaard*, which was decided before *Goodman*, relied on *Leese* and *Davis* for the proposition that the appropriate statute of limitations for a LAD claim was the six-year statute. Less than one month before plaintiff filed her complaint, however, another judge, relying on *Goodman*, held that the two-year personal-injury statute of limitations applied to LAD claims. See *White v. Johnson & Johnson Products, Inc.*, 712 *F.Supp.* 33 (D.N.J.1989). Although the rule was not clear when plaintiff commenced this action, she understandably could have concluded that, notwith-

standing *Goodman,* she had six years within which to file her claim.

Since plaintiff filed her complaint, the United States District Court, while recognizing that this Court had not yet settled the issue, has since applied only the six-year statute. See *United States v. Board of Education,* 798 *F.Supp.* 1093, 1095 (D.N.J. 1992); *Miller v. Beneficial Management Corp.,* 776 *F.Supp.* 936, 959 (D.N.J.1991), *rev'd on other grounds,* 977 *F.*2d 834 (3d Cir. 1992); *Carrington v. RCA Global Communications, Inc.,* 762 *F.Supp.* 632, 642 (D.N.J.1991). The Law Division has reached the same result. See *Lautenslager v. Supermarkets General Corp.,* 252 *N.J.Super.* 660, 669, 600 *A.*2d 525 (1991).

Plaintiff points, moreover, to the passing comment in *Shaner* that "[e]mployment discrimination can take the form of wrongful termination that may, in a particular context, constitute a tort or breach of contract." 116 *N.J.* at 452, 561 *A.*2d 1130. That comment, plaintiff argues, supports her reliance on the six-year statute applicable to contract claims. Finally, the Appellate Division, without analysis, in *Fisher v. Quaker Oats Co.,* 233 *N.J.Super.* 319, 559 *A.*2d 1, *cert. denied,* 117 *N.J.* 628, 569 *A.*2d 1331 (1989), adopted the six-year statute of limitations when rejecting the argument that the two-year statute in the federal Age Discrimination and Employment Act preempted the LAD limitation period. By contrast, the Appellate Division in the present case concluded that the two-year statute should apply to plaintiff's LAD claims.

■ We cannot conclude that when plaintiff filed her complaint, the period of limitations was either an issue that had been resolved by settled precedent or was one of first impression. Lower state and federal courts favored a six-year statute of limitations, but the United States Supreme Court inclined towards the two-year statute for analogous federal civil-rights claims. Given that conflict, to restrict plaintiff to the two-year statute would be unfair. Our tradition is to confine a decision to prospective application when fairness and justice require. The tradition is

particularly appropriate when "a court renders a first-instance or clarifying decision in a murky or uncertain area of the law ...," *Oxford Consumer Discount Co. v. Stefanelli,* 104 *N.J.Super.* 512, 521, 250 *A.*2d 593 (App.Div.1969), *aff'd,* 55 *N.J.* 489, 262 *A.*2d 874 (1970), or when a member of the public could reasonably have "relied on a different conception of the state of the law," *ibid.; see also Coons, supra,* 96 *N.J.* at 425–27, 476 *A.*2d 763 (stating that sound policy considerations, such as justifiable reliance, purpose of new rule, or adverse effect of retroactivity, may justify prospective applications).

The state of the law on the applicable statute of limitations under LAD was sufficiently murky to justify plaintiff's reasonable reliance on the six-year period. In addition, the Legislature has directed a liberal reading of LAD to afford the greatest protection to victims of discrimination. On balance, we conclude that our decision today should apply purely prospectively. Consequently, it applies only to cases in which the operative facts arise after the date of the decision. See *Coons II, supra,* 96 *N.J.* at 425–35, 476 *A.*2d 763. Our decision does not apply to this case, pending cases, or to cases the operative facts of which arose before the date of this decision.

The judgment of the Appellate Division is affirmed in part, reversed in part, and the matter is remanded to the Law Division.

*For affirmance in part; for reversal in part; for remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN–7.

*Opposed*—None.