588

818 A.2d 1270

A.B. AND S.B.W., PLAINTIFFS–APPELLANTS,
v. S.E.W., DEFENDANT–RESPONDENT.

Argued February 4, 2003—Decided April 1, 2003.

*William S. Singer,* argued the cause for appellants (*Singer & Fedun,* attorneys; *Mr. Singer* and *Mary Ann Bauer,* on the brief).

*Barbara A. Ulrichsen,* argued the cause for respondent (*Fox, Rothschild, O'Brien & Frankel,* attorneys; *Ms. Ulrichsen* and *Derek M. Freed,* of counsel and on the briefs).

*J.C. Salyer,* argued the cause for *amicus curiae, American Civil Liberties Union of New Jersey.*

The opinion of the Court was delivered by

VERNIERO, J.

In *V.C. v. M.J.B.,* this Court articulated the standard to be applied when determining whether a party, on the basis of his or her claimed status as a psychological parent, should be awarded custody of, and visitation with, a former domestic partner's biological children. 163 *N.J.* 200, 205, 748 *A.*2d 539, *cert. denied,* 531 *U.S.* 926, 121 *S.Ct.* 302, 148 *L.Ed.*2d 243 (2000). Nearly two years before we decided *V.C.,* the trial court in this case entered a final order denying plaintiff visitation with her former partner's daughter. Plaintiff did not appeal that determination. In her present application, plaintiff argues that *V.C.* should be applied to her case, requiring the trial court to reopen and reconsider the prior order. We hold that the trial court did not err in denying that application.

## I.

Briefly summarized, these are the pertinent facts derived largely from testimony before the trial court that entered the original order. A.B. (plaintiff) and S.E.W. (defendant) were domestic partners from November 1988 to November 1996. They decided that they both would become pregnant through artificial insemination. Defendant gave birth to K.W. in April 1993. Plaintiff had participated in defendant's Lamaze classes and was in the delivery room at K.W.'s birth. The parties announced K.W.'s arrival, both in the newspaper and to friends, with language that included both names as parents. Defendant gave K.W. plaintiff's surname as a middle name.

Plaintiff dressed and fed K.W. during the period when defendant sought employment soon after the birth. Plaintiff changed diapers, transported K.W. to and from day care, and provided financial support to the household. Plaintiff played with K.W. as

an infant and later supervised her on visits to the pool. Defense witnesses indicated that defendant performed most of the housework. K.W. called plaintiff "Mama G" and called defendant "Mama Li'l."

Plaintiff gave birth to S.B.W. in October 1994. The same anonymous sperm donor who contributed to K.W.'s conception also contributed to S.B.W.'s conception. After S.B.W.'s birth, the relationship between plaintiff and defendant soured. The couple's friends observed plaintiff's purported anger and resentment toward defendant. The trial court observed that "[t]his behavior affected [K.W.]" Specifically, the child threw temper tantrums, told defendant to "shut up," and once hit defendant. K.W.'s day care provider testified that just prior to the couple's eventual separation, K.W. was violent, irritable, and withdrawn, but that afterward she was well behaved.

The trial court summarized the testimony of another witness, a friend of the parties:

> [The witness] testified that [K.W.'s] demeanor and behavior changed during the fall, 1995, at the time of the parties' problems. She noted that [K.W.] began to treat and speak to the defendant in a rude and agitated manner similar to the manner exhibited by the plaintiff towards the defendant. Since the parties' separation [K.W.] has become calm, more affectionate, and happy.

The parties ended their cohabitation in November 1996. Defendant denied plaintiff's repeated overtures for visitation with K.W. Plaintiff sued for visitation in March 1997.

After hearing testimony from both fact and expert witnesses, the trial court determined that plaintiff had stood *in loco parentis* to K.W. The court found, however, that plaintiff had not proved by a preponderance of the evidence that visitation would be in K.W.'s best interests. The court specifically noted the improvement in K.W.'s behavior since the separation. It further observed that K.W. had not asked about S.B.W. during the year prior to the hearing and only rarely had asked about plaintiff. The court denied visitation in a decree entitled "final order" entered on September 9, 1998. Plaintiff did not appeal that determination.

In April 2000, this Court stated in *V.C.*, *supra*, that "[o]nce a third party has been determined to be a psychological parent to a child ... he or she stands in parity with the legal parent." 163 *N.J.* at 227, 748 *A.*2d 539. We also concluded that when a plaintiff stands as a psychological parent to a minor, "visitation ... will be the presumptive rule[.]" *Id.* at 228, 748 *A.*2d 539.

Claiming similarity between *V.C.* and her own case, plaintiff moved in August 2000 to reopen the September 9, 1998, order and to obtain visitation with K.W. Responding to defendant's argument that the time to appeal that order had expired, plaintiff cited *Rule* 4:50–1. That rule enumerates certain grounds on which to set aside a prior judgment or order, such as mistake, newly discovered evidence, and fraud. *R.* 4:50–1(a)–(c). It also includes a catchall provision that permits a court to reopen a final decree for "any other reason justifying relief from the operation of the judgment or order." *R.* 4:50–1(f). Relying on the catchall provision, plaintiff cited as her reason for relief the new standard announced in *V.C.*

The trial court (a judge different than the one who had entered the original order) denied plaintiff's application. The Appellate Division upheld that determination in an unreported opinion. We granted plaintiff's petition for certification, 174 *N.J.* 193, 803 *A.*2d 1164 (2002), and now affirm.

## II.

Relief is available under *Rule* 4:50–1(f) "only when truly *exceptional circumstances* are present." *In re Guardianship of J.N.H.*, 172 *N.J.* 440, 473, 799 *A.*2d 518 (2002) (citation and internal quotation marks omitted). To prevent endless re-litigation of settled cases, new developments in case law generally do not qualify as " 'an extraordinary circumstance' as to justify relief from a final judgment[.]" *Hartford Ins. Co. v. Allstate Ins. Co.*, 68 *N.J.* 430, 434, 347 *A.*2d 353 (1975) (citation omitted). We have noted in an analogous case involving termination of parental rights:

On a *Rule* 4:50 motion, the need to achieve equity and justice always is balanced against the state's legitimate interest in the finality of judgments. Where the future of a child is at stake, there is an additional weight in the balance: the notion that stability and permanency for the child are paramount.

[*J.N.H., supra*, 172 *N.J.* at 474–75, 799 *A.*2d 518 (internal citations omitted).]

Applying those tenets, we are satisfied that the trial court did not err when it declined to reopen the prior order. Within the framework of *Rule* 2:4–1, the time to appeal that order clearly had expired. See *R.* 2:4–1(a) (providing that parties shall appeal final judgments "within 45 days of their entry"). In keeping with the traditional manner in which we treat new case law, *V.C.* is not an exceptional circumstance. Absent such a circumstance, we are constrained to uphold the trial court's original visitation decree. "This is unquestionably [consistent with] the general rule and rests principally upon the important policy that litigation must have an end." *Hartford, supra*, 68 *N.J.* at 434, 347 *A.*2d 353.

Although our analysis need go no further, we comment briefly on the factual record to underscore the special concerns that are implicated whenever an application submitted under *Rule* 4:50 relates to custody or child visitation. The parties separated amidst acrimony visible to their friends, co-workers, and K.W. herself. The acrimony adversely affected the child's behavior. As several witnesses observed, K.W.'s equanimity returned only after the parties had ended their conflict. Allowing plaintiff to re-enter K.W.'s life, six and a half years after plaintiff's relationship with defendant had ceased, would risk harm to the child. Additionally, one expert testified that parent-child bonding and attachment diminish over time. In view of those facts, K.W.'s paramount interest in stability and permanency appears to outweigh significantly the asserted benefits of plaintiff's requested relief.

Prior cases similarly have highlighted that courts must consider the prejudice and foreseeable harm to a child when a legal challenge jeopardizes that child's well-settled home environment. *See, e.g., In re Adoption of a Child of Indian Heritage*, 111 *N.J.* 155, 190, 543 *A.*2d 925 (1988) (considering putative father's delay when evaluating that party's adoption challenge); *In re Guardian-*

*ship of J.R.,* 174 *N.J.Super.* 211, 416 *A.*2d 62 (App.Div.) (severing parental rights of biological mother in favor of foster parents following child's long-term placement in foster home), *certif. denied,* 85 *N.J.* 102, 425 *A.*2d 266 (1980). That plaintiff might have been blameless in her absence from K.W. does not alter our observations. See *Sorentino v. Family and Children's Soc'y of Elizabeth,* 72 *N.J.* 127, 132, 367 *A.*2d 1168 (1976) (noting that "[t]he possibility of serious psychological harm to the child in this case transcends all other considerations[,]" including claim that adversely affected biological mother had been coerced into giving up her child).

Similarly, we are not persuaded by plaintiff's additional argument that the trial court should have reopened the prior order for the purpose of affording her son, S.B.W., contact with K.W. The testimony below indicates that S.B.W., who was diagnosed with autism after his birth, rarely interacted with K.W. when they lived together. We also infer from the record that because of his autism, S.B.W. could not visit with K.W. unless supervised by plaintiff or another adult. Along those lines, the trial court that entered the original order concluded that visits between the two children necessarily would involve contact with plaintiff, a circumstance inimical to K.W.'s interests. The disruption and sudden instability that would result from K.W.'s perspective if such visits were to occur are greater than the uncertain benefits that might result.

Alternatively, plaintiff contends that the trial court's 1998 disposition constitutes a visitation order that is subject to that court's continuing jurisdiction. In evaluating plaintiff's present application, the trial court stated that "in theory, certainly the plaintiff is correct." By their nature, visitation orders often are subject to future revision depending on changed factual circumstances in a given case. *Voit v. Voit,* 317 *N.J.Super.* 103, 721 *A.*2d 317 (Ch.Div.1998). The jurisdiction of the court, however, cannot be invoked merely because a party wishes to argue new or developing case law such as *V.C.* Invoking jurisdiction on that

basis would deprive all parents and children of repose from visitation complaints.

In other words, our conclusion is the same whether we evaluate plaintiff's application through the prism of *Rule* 4:50 or as a more typical request to revise an existing visitation schedule. Additionally, given the terms of the trial court's original order completely denying all visits, the parties could not reasonably have expected any revisions to that disposition absent changed factual circumstances. We are satisfied that without more, the issuance of *V.C.* is insufficient to warrant reopening the prior decree. The trial court on the present motion did not err in disposing of this matter in the manner that it did.

## III.

In addition to her arguments relating to *Rule* 4:50, plaintiff more broadly contends that *V.C.* should be applied retroactively to her case. Specifically, plaintiff seeks the benefit of the presumption in favor of visitation should she satisfy *V.C.*'s four-prong test for psychological parenthood. *See V.C., supra,* 163 *N.J.* at 223, 228, 748 *A.*2d 539.

Briefly stated,

"[p]rospective application is appropriate when a decision establishes a new principle of law by overruling past precedent or by deciding an issue of first impression." *Montells v. Haynes,* 133 *N.J.* 282, 295, 627 *A.*2d 654 (1993). In determining whether to apply a rule prospectively, "we must weigh, among other things, 'whether retroactive applications could produce substantial inequitable results.'" *Cox v. RKA Corp.,* 164 *N.J.* 487, 514, 753 *A.*2d 1112 (2000) (quoting *Montells, supra,* 133 *N.J.* at 295, 627 *A.*2d 654).

[*Alderiso v. Med. Ctr.,* 167 *N.J.* 191, 203, 770 *A.*2d 275 (2001).]

Assuming that *V.C.* reflects a new rule of law, we decline to apply it retroactively to this or any similar case in which the time for direct appeal so clearly has expired. Such retroactivity would expose children and their caregivers to a serious disruption of their family life. As this matter well demonstrates, courts should avoid interfering with well-settled home environments unless the equities of a given case clearly compel that result. Informed by

our analysis under *Rule* 4:50, we conclude that this is not such a case.

## IV.

The judgment of the Appellate Division is affirmed.

*For affirming*—Chief Justice PORITZ and Justices COLEMAN, VERNIERO, LaVECCHIA, and ZAZZALI, and Judges PETRELLA and SKILLMAN, temporarily assigned—7.

*Opposed*—None.