**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0571-21

AMPARO VARGAS,

     Plaintiff-Appellant,

v.

BASF CORPORATION,

     Defendant-Respondent.

_____

Argued May 3, 2023 – Decided May 14, 2024

Before Judges Accurso and Vernoia.

On appeal from the Superior Court of New Jersey,
Law Division, Union County, Docket No. L-2340-18.

Steven V. Schuster argued the cause for appellant.

Leslie Ann Lajewski argued the cause for respondent
(Ogletree, Deakins, Nash, Smoak & Stewart, PC,
attorneys; Leslie Ann Lajewski, on the brief).

The opinion of the court was delivered by

ACCURSO, P.J.A.D.

Plaintiff Amparo Vargas appeals from an April 30, 2021 trial court order denying her motion to extend discovery for a sixth time in the face of a scheduled trial date, and from summary judgment dismissing her employment discrimination complaint against defendant BASF Corporation. Because we cannot find the trial court abused its discretion in refusing to extend discovery, and it correctly concluded that plaintiff's employment claims are time-barred or otherwise not actionable, we affirm both orders.

Plaintiff, born in Columbia, began her employment at BASF in late 2010, days before her forty-seventh birthday. The offer letter plaintiff signed states she was being hired as an associate chemist. Plaintiff, however, claims she applied for a position in BASF's Union lab as a chemist and was hired into that position, albeit erroneously at an associate chemist's paygrade. According to plaintiff, she was denied promotions in 2013, 2014, and 2015, and demoted to associate chemist in a restructuring of the lab in 2015, although her paygrade did not change. She also claims she was wrongfully denied a tuition reimbursement in 2015. Plaintiff asserts she complained to Human Resources that year about "being discriminated against in her career at BASF because of her age and that BASF was only advancing younger people."

A-0571-21

Although plaintiff earned excellent performance reviews from her supervisors in 2010, 2011, 2012, 2013, and 2014, and received a pay increase and a bonus every year she was with the Company, she contends those supervisors and others created a hostile work environment for her by, among other reasons, not greeting her or saying hello in the hallway, by becoming angry with errors in her work, by refusing to allow her to attend Latin American affinity group meetings of BASF employees, by asking her why she took food from another lab group's party, by making angry faces at her, and by wanting to double-check her work.

The parties agree plaintiff's last day in the lab was July 14, 2016. Plaintiff had begun to experience a reoccurrence of physical problems she'd had a few years before stemming from repetitive motions in her bench work. On June 24, 2016, plaintiff reported to Human Resources that she had pain in her hands. BASF consulted with its safety specialist, who recommended plaintiff see a Company doctor. On June 30, plaintiff's supervisor advised her lab work would be limited until she saw the doctor, and she was to stop work immediately if she had any pain in her hands.

Plaintiff went on vacation from July 1 through July 6. On plaintiff's return to the lab on July 7, she was evaluated by BASF's doctor. The doctor

3

recommended plaintiff not lift or carry anything heavier than ten pounds and that she limit the use of her right hand, including "no pipetting, no grasping large beakers." The manager of plaintiff's group thereafter emailed plaintiff asking that she "please refrain from any and all lab work" pending his review of the doctor's recommendations. Plaintiff did not perform any lab work from July 7 through July 12.

On July 12, plaintiff met with her supervisor and the manager of her group to discuss how her duties would be modified to "accommodate her injury." BASF relieved plaintiff of all "wet chemistry" work, including handling and working with beakers, dissolving samples, using wash bottles, handling flasks, mixing solutions, making reagent solutions, and performing filtration and waste disposal. Plaintiff was limited to weighing the fresh catalyst samples for her group, fusing samples if possible, and calculating and entering data into the computer.

Plaintiff admits she did not object to the modified job duties or request any specific accommodation during the July 12 meeting. She also acknowledges her supervisor sent her an email after the meeting reiterating that she was to follow the doctor's instructions, including the "restrictions of not handling 800 ml glassware, no pipetting, no use of squeeze bottles, not

4

using furnace tongs or similar" equipment, and that she stop work immediately "[i]f at any time you feel pain or unsafe doing any work and notify your manager."

Plaintiff returned to the lab on July 13 performing her modified duties. She worked for a few hours weighing samples but stopped after her right hand began to hurt and did computer work for the rest of the day. She told her supervisor about the pain in her hand, and he suggested she rely more on her left hand. Plaintiff returned and performed her modified duties the following day, July 14. Although she did not advise anyone about pain in her hands that day, she did complain of a headache after weighing the day's samples and reminded her team leader that she should not be weighing any samples containing nickel because she claimed to be allergic to it. Plaintiff did not return to work the following day. She thereafter applied for long-term disability leave, which BASF approved.[1]

On July 6, 2018, eight days shy of two years from her last day on the job, plaintiff filed a five-count complaint against BASF, later amended,

---

[1] The parties dispute whether BASF continued plaintiff's employment while she was on disability leave or whether she had been forced to resign when she stopped working in July 2016. As the fact is not relevant to our analysis, we need not consider the point.

A-0571-21

alleging age and national origin discrimination in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, a hostile work environment under the LAD, a claim that BASF's alleged age and national origin discrimination was in violation of its own policies, a breach of contract claim under Woolley v. Hoffman LaRoche, Inc., 99 N.J. 284 (1995), and a retaliatory and wrongful discharge claim pursuant to Pierce v. Ortho Pharmaceutical Corporation, 84 N.J. 58 (1979). The original discovery end date was October 30, 2019, which the parties agreed to extend sixty days until December 29, 2019, by consent. See R. 4:24-1(c).

After twice extending discovery, the court in July 2020 extended it again, this time through the end of the year and set a March 2021 trial date. In December 2020, the presiding judge granted BASF's motion, on plaintiff's consent, to extend discovery another three months and adjourned the trial date to the end of June. The presiding judge again extended discovery in March on plaintiff's motion with BASF's consent, but for only forty-five days, half of what was requested. The judge set a new trial date for August 2, 2021. The presiding judge thereafter denied plaintiff's unopposed motion to extend discovery another eighty days, finding counsel could not establish exceptional circumstances under Rule 4:24-1(c) warranting any further extension.

6

A-0571-21

At argument on BASF's subsequent summary judgment motion, plaintiff's counsel acknowledged the central issue in the case was whether BASF's alleged failure to accommodate plaintiff's hand injury in her last days at work could sweep in all her other alleged acts of discrimination — which concededly occurred more than two years before she filed her complaint — under the continuing violation doctrine.

The court found the continuing violation doctrine could not sweep in discrete acts, such as BASF's alleged failure to promote plaintiff or reimburse her for her tuition, because the cause of action for those acts accrued on the dates they occurred, which were more than two years prior to the institution of suit. See Shepherd v. Hunterdon Dev. Ctr., 174 N.J. 1, 17-22 (2002). The court further found plaintiff could not establish a prima facie case on her accommodation claim because of her failure to participate in the "interactive accommodation process," see Victor v. State, 203 N.J. 383, 423-24 (2010), BASF initiated in modifying her duties in accordance with the advice of the Company's doctor, see Potente v. Cnty. of Hudson, 187 N.J. 103, 111 (2006).

As BASF's alleged failure to accommodate plaintiff's hand injury was the only discriminatory act plaintiff alleged occurred within the two-year limitations period, see Montells v. Haynes, 133 N.J. 282, 291-93 (1993), the

7

court found plaintiff could not establish any discriminatory acts occurred within the limitations period, and thus the continuing violation doctrine was not available to sweep in any non-discrete discriminatory acts occurring more than two years before plaintiff filed her complaint. See Roa v. Roa, 200 N.J. 555, 569-70 (2010). Finally, the judge found defendant's common law claims under Woolley and Pierce were preempted by her statutory claim and thus properly dismissed as well. See Catalane v. Gilian Instrument Corp., 271 N.J. Super. 476, 492 (App. Div. 1994) (holding "supplementary common law causes of action may not go to the jury when a statutory remedy under the LAD exists").

Plaintiff appeals, contending the court erred in granting summary judgment because there were material facts in dispute on the motion, that she successfully established "all the elements of her LAD claims" of "hostile work environment, harassment, and disparate treatment including adverse employment actions because of her age, national origin, and disability," as well as retaliation, and that her claims "are all within the statute of limitations." She contends her "claim for tuition reimbursement is also a contractual claim under Woolley and thus is not waived by her LAD claims," and that she can "establish an independent Pierce claim which is not

duplicative of her LAD claims."  Finally, she contends the presiding judge erred in denying her request to extend discovery.  Having reviewed the record, we're satisfied that none of these claims has any merit.

We, of course, review summary judgment using the same standard that governs the trial court.  Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012).  Thus, we view the facts in the light most favorable to plaintiff and consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Surplus Ins. Corp., Inc. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)).

Because plaintiff waited to file suit until July 6, 2018, almost two years after the date she left work on disability leave on July 14, 2016, her entire case concededly hinges on BASF's alleged failure to accommodate her hand injury during those few days still within two years preceding the filing of her complaint.  She argues the failure to reasonably accommodate her injury — which she claims was the culmination of BASF's ongoing campaign of age, national origin, and disability discrimination, as well as retaliation for her

9

reports of pain and safety concerns in the lab — "extends the statute of limitations for all related claims."

Accepting plaintiff's premise that the failure to accommodate her injury was the last in a series of discriminatory acts, there is no question but that her claims that BASF unlawfully discriminated against her by failing to promote her and by refusing to reimburse her tuition are time-barred, because they were discrete acts occurring more than two years before plaintiff filed suit. See Roa, 200 N.J. at 570 (explaining "that discrete acts of discrimination and retaliation 'are not actionable if time barred, even when they are related to acts alleged in timely filed charges'") (quoting Benjamin J. Morris, A Door Left Open? National Railroad Passenger Corporation v. Morgan and Its Effect on Post-Filing Discrete Acts in Employment Discrimination Suits, 43 Cal. W. L. Rev. 497, 508 (2007) (quoting Nat. Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002))).

Although plaintiff's time-barred discrete act claims might still be evidential in her timely-filed failure to accommodate claim, the accommodation claim must be viable "to sweep in otherwise untimely prior non-discrete acts" under the continuing violation doctrine. Id. at 569. Without a viable failure to accommodate claim, plaintiff is left without any culminating

10

discriminatory act occurring within the limitations period to pull in prior non-discrete incidents she claims are part of the same claim. See id. at 567 (explaining the cause of action for a continuing violation under the LAD "accrues on the date on which the last component act occurred").

The problem for plaintiff is that her failure to accommodate claim is not viable. Even viewing the facts in the light most conducive to the success of her claim, she cannot establish that BASF failed to make a good faith effort to reasonably accommodate her injury, a critical element in her proof. See Royster v. N.J. State Police, 227 N.J. 482, 500 (2017) (defining the three elements plaintiff must demonstrate for a failure-to-accommodate claim: (1) the plaintiff has a disability; (2) is able to perform the essential functions of the job with or without an accommodation; and (3) the employer failed to reasonably accommodate the disability).

Plaintiff acknowledges BASF modified her lab duties in response to her complaint of pain in her hand but argues the purported accommodation it implemented made the pain in her hand worse, because her modified duties required more work and greater use of her right hand. Thus, she claims there exists a genuine dispute over whether the modification of her duties was a

reasonable accommodation of her injury pursuant to N.J.A.C. 13:13-2.5(b)[2] that must be resolved by a jury and "not the court as a matter of law." We disagree.

Plaintiff misperceives the trial court's finding. The trial court did not resolve the factual dispute over whether the modification of duties offered by BASF was a reasonable accommodation of the injury to plaintiff's hand. It didn't have to, because it found on the undisputed facts that plaintiff had failed to participate in the interactive process initiated by BASF to find a suitable modification. The court found plaintiff's refusal to participate in that process left her unable to establish BASF had failed to reasonably accommodate her injury.

Specifically, the court relied on the undisputed facts in the motion record to conclude BASF had modified plaintiff's duties based on the

---

[2] N.J.A.C. 13:13-2.5(b) provides:

> An employer must make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business. The determination as to whether an employer has failed to make reasonable accommodation will be made on a case-by-case basis.

A-0571-21

recommendations of the Company's doctor; that her supervisors met with her to discuss the changes, to which she raised no objection; that her supervisor sent her an email after that meeting reiterating she was to follow the doctor's instructions, stop work immediately and notify her manager "[i]f at any time you feel pain or unsafe doing any work"; that plaintiff worked for only two days after BASF modified her duties; that she complained to her supervisor of continued pain in her hand after she weighed all her samples on the first day, after which she did computer work; that she completed all tasks on the second day but complained to her team leader of a headache, reminding him that she shouldn't be weighing samples containing nickel;[3] and that she thereafter never returned to the lab.

Although our Supreme Court has held "an employer's inaction, silence, or inadequate response to a reasonable accommodation request" may create a cause of action, Richter v. Oakland Bd. of Educ., 246 N.J. 507, 531 (2021), the Court has also made clear that "[p]lainly, an employee cannot refuse to cooperate with an employer's efforts to accommodate his disability and then claim failure to accommodate," Potente, 187 N.J. at 111 (citing Beck v. Univ.

---

[3] Plaintiff testified at her deposition she didn't know whether the samples she'd weighed that day contained nickel.

A-0571-21

of Wis. Bd. of Regents, 75 F.3d 1130, 1135-36 (7th Cir. 1996)). Our courts have uniformly held that once an employee has made a request for an accommodation, "the employer must initiate an informal interactive process with the employee," in which "'both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith.'" Tynan v. Vicinage 13 of Superior Court, 351 N.J. Super. 385, 400 (App. Div. 2002) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999)). Unlike in Potente where there was a genuine dispute over whether the defendant had initiated that process or whether the plaintiff had refused to participate, 187 N.J. 110-12, here there is no dispute that BASF initiated the process by sending plaintiff for a physical examination and modifying her duties in an effort to accommodate her hand injury, and that plaintiff did not participate, working only two days before leaving the job without further discussion.

Although plaintiff now claims the modifications offered in 2016 did not accommodate her disability and indeed made it worse, she didn't lodge any objection to the modifications BASF offered at that time or suggest any of her own. Plaintiff simply didn't engage in the interactive process BASF initiated. As the Seventh Circuit explained in Beck,

14

neither party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

75 F.3d at 1135.

Reviewing the summary judgment record in the light most favorable to plaintiff, as we must, Comprehensive Neurosurgical, P.C. v. Valley Hosp., __ N.J. __ (2024) (slip op. at 41), the evidence that plaintiff caused the breakdown in the process — by rejecting her modified duties after only two days and abruptly abandoning the process by leaving the lab without suggesting how they could be improved — is so one-sided that BASF must prevail as a matter of law on plaintiff's failure to accommodate claim. The law does not require an employer to be clairvoyant about the modifications that could allow an employee to continue her work by reasonably accommodating her disability. It mandates an interactive process because a reasonable accommodation may not be the first one tried. See Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1138 (9th Cir. 2001) (noting "the employer's obligation

to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed").

Plaintiff's failure to cooperate with BASF's efforts to accommodate her injury mandated summary judgment to BASF on her failure to accommodate claim, and thus on all her LAD claims, those for age and national origin discrimination as well as hostile environment, under the LAD's two-year statute of limitations. See Montells, 133 N.J. at 291-93.

Plaintiff's remaining claims require only brief comment. Even if her breach of contract claim under Woolley and her Pierce wrongful termination claim are not supplanted by the LAD, see Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 90 (App. Div. 2001) (noting the bar to common law claims arising out of the same facts that do "not seek to vindicate interests independent of those protected by the LAD"), the claims are not actionable.

Although BASF's tuition reimbursement policy provides certain employees "are eligible to receive tuition reimbursement . . . for courses and seminars" that are either "job related" or "related to a job within BASF to which the [e]mployee can reasonably aspire in the future," the policy

unequivocally commits the approval of applications, which must be submitted before enrollment, to "[BASF's] sole discretion." Plaintiff did not submit an application before enrollment in accordance with the policy, and we cannot find, as a matter of law, that BASF breached a "promise" of reimbursement to plaintiff under a policy that reserved to BASF the decision to provide tuition reimbursement to plaintiff in its sole discretion. See Woolley, 99 N.J. at 292.

Plaintiff cannot establish a Pierce claim because she cannot demonstrate she was terminated or constructively discharged because of her failure to engage in the interactive process BASF initiated to accommodate her disability before leaving her job. See Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 102 (2008) (explaining the Court recognized "a common law cause of action for retaliatory discharge" in Pierce). In addition, plaintiff has not directed us to any authority extending New Jersey's "strong public policy . . . favoring safety in the workplace," Cerracchio v. Alden Leeds, Inc., 223 N.J. Super. 435, 445-46 (App. Div. 1988), to "recommendations to improve the ergonomics of the workplace."

Finally, we find no fault in the presiding judge's refusal to extend discovery for the sixth time in the face of the third rescheduled trial date. The parties had already been allowed an additional eighteen months to complete

discovery in a case that hinged on a single issue. Having reviewed the conclusory certification submitted on the motion seeking even more time, we have no doubt the court did not abuse its discretion in concluding plaintiff did not establish exceptional circumstances to extend discovery further. See R. 4:24-1(c); Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0571-21