# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2404-24
A-0338-25

JESSICA GARCIA,

 Plaintiff-Respondent,

v.

UNION CITY BOARD OF
EDUCATION, d/b/a UNION CITY
HIGH SCHOOL, a/k/a HIGH HALL
HIGH SCHOOL,

 Defendant-Appellant,

and

FRANCISCO REALPE and
PIVOTAL DEVELOPMENTS,
LLC,

 Defendants.

_____

JANE DOE,

 Plaintiff-Respondent,

v.

UNION CITY BOARD OF
EDUCATION, d/b/a UNION CITY
HIGH SCHOOL, a/k/a HIGH HALL
HIGH SCHOOL,

      Defendant-Appellant,

and

FRANCISCO REALPE and
PIVOTAL DEVELOPMENTS, LLC,

      Defendants.

_____

      Argued October 16, 2025 – Decided November 17, 2025

      Before Judges Marczyk and Puglisi.

      On appeal from interlocutory orders of the Superior
      Court of New Jersey, Law Division, Hudson County,
      Docket Nos. L-1394-21 and L-2710-21.

      Todd S. McGarvey argued the cause for appellant (Shah
      Law Group, LLC, and Chiesa Shahinian & Giantomasi
      PC, attorneys; Roshan D. Shah, Todd S. McGarvey,
      Jeffrey S. Chiesa, and Mauro G. Tucci Jr., on the
      briefs).

      Oliver T. Barry argued the cause for respondents
      (Barry, Corrado & Grassi, PC, attorneys; Oliver T.
      Barry, on the brief).

PER CURIAM

    We granted leave to appeal and consolidate these two related matters for

disposition in a single opinion. Defendant Union City Board of Education

appeals from the trial court's March 5, 2025 orders granting plaintiff Jessica Garcia's motion for summary judgment on her vicarious liability claim and denying defendant's motion for summary judgment. Defendant further challenges the trial court's August 14, 2025 order granting plaintiff Jane Doe's motion for summary judgment on her vicarious liability claim and denying defendant's motion for summary judgment.

We address two primary issues on appeal. First, whether the 2019 amendments to the Tort Claims Act (TCA), N.J.S.A. 59:1-1 to :12-3, removed the scope of employment liability predicate for claims of sexual abuse under N.J.S.A. 59:2-2(a). Second, we address whether the trial court erred in finding the 2019 amendments to the Child Victims Act (CVA), N.J.S.A. 2A:14-2a to -2c, expanded the statute of limitations for claims under the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, to events that occurred in 2004. We reverse in part, affirm in part, and remand for further proceedings.

I.

From 2002 through 2005, defendant employed Francisco "Mike" Realpe as a full-time physical education teacher and softball coach at Union City High School, where Garcia and Jane Doe were students. Realpe was Garcia's assistant softball coach during her junior and senior years. One evening in the spring of

2004, when she was seventeen years old, Realpe brought her into his office after softball practice and sexually assaulted her.

Realpe was also Jane Doe's gym teacher. In the spring of her senior year in 2004, Realpe sexually assaulted her in a locker room during an after-school event.[1]

Both plaintiffs asserted claims against defendant for negligent supervision, negligent training, vicarious liability, and hostile educational environment in violation of the LAD.[2] Following discovery, defendant moved for summary judgment to dismiss Garcia's claims. Garcia cross-moved for partial summary judgment with respect to negligent training, negligent supervision, and vicarious liability. On March 5, 2025, following oral argument, the trial court denied defendant's motion for summary judgment in its entirety, and granted, in part, Garcia's affirmative summary judgment motion. Specifically, the court granted Garcia's motion as to vicarious liability against defendant for its agent Realpe's sexual abuse of Garcia. It found the 2019

---

[1] Realpe was charged in 2020 and later pled guilty to sexually assaulting Garcia in 2004 and another female student from a different school district in 2019.

[2] Plaintiffs asserted other claims that are not relevant to this appeal. Defendant did not move for leave to appeal the denial of its motion for summary judgment regarding the negligent supervision and training claims.

amendment to the TCA "disabled immunities that public entities previously enjoyed from intentional misconduct of their employees in the context of sexual abuse," and held "employers liable for their employees' intentional misconduct of a sexual nature outside the scope of employment." It further determined Garcia's LAD claims were revived under the CVA amendments.

The parties engaged in the same motion practice in Doe's case. The trial court again denied defendant's motion in its entirety and partially granted Doe's affirmative motion regarding her vicarious liability claim, finding defendant liable for Realpe's actions, despite being outside the scope of his employment. The court likewise found Doe could pursue her LAD claim.

On appeal, the parties are only disputing plaintiffs' claims of vicarious liability under the TCA and the viability of an LAD claim under the 2019 amendments to the CVA, L. 2019, c. 120, L. 2019, c. 239; N.J.S.A. 2A:14-2a and -2b.

II.

Defendant argues the trial court erred in granting plaintiffs' affirmative summary judgment motions on their vicarious liability claims and denying defendant's summary judgment motions as to this issue, contrary to the TCA and existing case law. It further contends the trial court erred in denying its motions

for summary judgment regarding plaintiffs' LAD claims, which it asserts were time-barred and should not have been retroactively applied to the 2004 assaults in this matter, and that plaintiffs failed to establish a prima facie case for their hostile educational environment claims.

We review the grant of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). A motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Additionally, we review rulings of law and issues regarding the applicability, validity, or interpretation of laws, statutes, or rules de novo. See Kocanowski v. Twp. of Bridgewater, 237 N.J. 3, 9 (2019). "The Legislature's

intent is the paramount goal when interpretating a statute and, generally, the best indicator of that intent is the statutory language." Ibid. (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "[I]f there is ambiguity in the statutory language that leads to more than one plausible interpretation, [a reviewing court] may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" Ibid. (first alteration in original) (quoting DiProspero, 183 N.J. at 492-93). A reviewing court will also consider extrinsic evidence "if a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme." Id. at 10 (quoting State v. Twiggs, 233 N.J. 513, 533 (2018)).

A.

Defendant asserts the trial court misinterpreted the 2019 amendments to the TCA and erred in finding it was responsible for Realpe's sexual misconduct, which occurred outside the scope of his employment. It argues the court mistakenly determined the TCA no longer requires an employee's conduct to fall within the scope of their employment in order to impose liability on the employer. Defendant contends the court essentially found public entities are strictly liable for intentional acts, such as sexual assaults, even when committed outside the scope of employment.

7

Defendant argues, under N.J.S.A. 59:2-2(a), a public entity is only "liable for injur[ies] proximately caused by an act . . . of a public employee within the scope of [their] employment." It asserts an intentional tort committed by an employee will rarely fall within the scope of employment. See Davis v. Devereux Found., 209 N.J. 269, 303 (2012). It further contends courts must analyze certain factors, collectively, to support a finding that an employee's act is within the scope of their employment, which the trial court failed to do here.[3]

Plaintiffs counter the 2019 amendments to the TCA, N.J.S.A. 59:2-1.3, provide "immunity from civil liability granted by [the TCA] . . . shall not apply" to qualifying claims for sexual abuse. They assert N.J.S.A. 59:2-1.3 "does not

---

[3] These factors are:

> (a)  [the act] is of the kind [they are] employed to perform;
>
> (b)  [the act] occurs substantially within the authorized time and space limits;
>
> (c)  it is actuated, at least in part, by a purpose to serve the master; and
>
> (d)  if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> [Davis, 209 N.J. at 303.]

A-2404-24

state that the specific immunities within the TCA that may apply to bar claims under predicate liability provisions . . . shall not apply." Rather, they maintain the statute "states that immunity from civil liability shall not apply." In other words, plaintiffs maintain N.J.S.A. 59:2-1.3 disables the general sovereign immunity under the TCA, not the specific immunities, such as N.J.S.A. 59:2-10. Therefore, plaintiffs claim the trial court was neither required to utilize the traditional analytical framework of the TCA, nor was it required to consider whether there existed a predicate liability provision exception "to the threshold immunity established by the TCA."

Plaintiffs argue N.J.S.A. 59:2-1.3 defined "qualifying types of misconduct" and clarified such conduct disables immunity from civil liability provided by the TCA, and thus, because plaintiffs' vicarious liability claims are based on qualifying misconduct, those claims are not barred by immunity from civil liability under the TCA. They further assert the vicarious liability claim is not barred by N.J.S.A. 59:2-2(a) "because the threshold immunity established by the TCA is disabled by N.J.S.A. 59:2-1.3." Plaintiffs also insist the Legislature enacted the amendments "to apply the same standard of liability applicable to religious and nonprofit organizations" as established in Hardwicke v. American Boychoir School, 188 N.J. 69, 98 (2006). Plaintiffs further assert

the trial court "correctly ruled that the <u>Restatement (Second) of Agency</u> § 219[(2)](c) and (d)[4] provided a basis for establishing vicarious liability against [defendant]."[5]

We conclude the trial court erred in finding defendant liable—notwithstanding N.J.S.A. 59:2-2(a), the TCA's vicarious liability provision—for

---

[4]  Section 219 of the <u>Restatement (Second) of Agency</u> (Am. L. Inst. 1958) provides:

> (1)  A master is subject to liability for the torts of [their] servants committed while acting in the scope of their employment.
>
> (2)  A master is not subject to liability for the torts of [their] servants acting outside the scope of their employment, unless:
>
> > (a)  the master intended the conduct or the consequences, or
> >
> > (b)  the master was negligent or reckless, or
> >
> > (c)  the conduct violated a non-delegable duty of the master, or
> >
> > (d)  the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or [they] w[ere] aided in accomplishing the tort by the existence of the agency relation.

[5]  It does not appear the trial court referenced the <u>Restatement</u>.

Realpe's sexual assaults committed outside the scope of his employment. The 2019 amendments to the TCA were part of the expansive legislation under the CVA, and were intended to: extend the statutes of limitations for claims of sexual abuse for both child and adult victims; create a two-year window for victims to bring claims otherwise time-barred under the newly extended statutes; expand the categories of potential defendants in such actions; and allow, for some actions, "retroactive application of standards of liability to past acts of abuse for which liability did not previously exist." S. Judiciary Comm. Statement to S. 477 (Mar. 7, 2019) (L. 2019, c. 120). In addition to creating new statutes of limitations for claims arising out of sexual abuse, Chapter 120 amended the TCA; the Child Sexual Abuse Act (CSAA), N.J.S.A. 2A:61B-1; and the Charitable Immunity Act (CIA), N.J.S.A. 2A:53A-7 to -11. See N.J.S.A. 2A:14-2.

As to the TCA, Chapter 120 extended the statute of limitations for claims against public entities for sexual assault pursuant to the newly enacted statute of limitations for sexual abuse claims, N.J.S.A. 2A:14-2a and -2b, and abrogated the notice and filing requirements in Chapter 8 for such claims. See W.S. v. Hildreth, 252 N.J. 506, 512-14 (2023) (explaining the effect of the extended

statute of limitations and the abrogation of procedural requirements for claims of sexual abuse filed against a public entity on or after December 1, 2019).

The parties' arguments center on N.J.S.A. 59:2-1.3, a new section inserted into the TCA, entitled "Liability for public entity, employee," which provides:

> a. Notwithstanding any provision of the "New Jersey [TCA]," N.J.S.[A.] 59:1-1 et seq., to the contrary:
>
> (1) immunity from civil liability granted by that act to a public entity or public employee shall not apply to an action at law for damages as a result of a sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c. 7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c. 109 (C.2A:61B-1) being committed against a person, which was caused by a willful, wanton or grossly negligent act of the public entity or public employee; and
>
> (2) immunity from civil liability granted by that act to a public entity shall not apply to an action at law for damages as a result of a sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c. 7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c. 109 (C.2A:61B-1) being committed against a minor under the age of [eighteen], which was caused by the negligent hiring, supervision or retention of any public employee.

b.    Every action at law involving a public entity or public employee as described in subsection a. of this section shall be subject to the statute of limitations set forth in section 2 of P.L.2019, c. 120 (C.2A:14-2a), and may be brought during the two-year period set forth in subsection a. of section 9 of P.L.2019, c. 120 (C.2A:14-2b),[6] notwithstanding that the action would otherwise be barred through application of the statute of limitations.

In analyzing the trial court's interpretation of N.J.S.A. 59:2-1.3 and its conclusion the statute did not require it to consider whether Realpe's conduct was within the scope of his employment, we first review the framework of the TCA.  N.J.S.A. 59:2-1 establishes the structure of the TCA:

a.    Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

b.    Any liability of a public entity established by this act is subject to any immunity of the public entity and is subject to any defenses that would be available to the public entity if it were a private person.

In 1972, the Legislature adopted the TCA and re-established the immunity of all governmental bodies in New Jersey following its abrogation of Willis v. Department of Conservation & Economic Development, 55 N.J. 534 (1970).

---

[6]  The two-year window was from December 1, 2019 to November 30, 2021.

See Chatman v. Hall, 128 N.J. 394, 414 (1992); Velez v. City of Jersey City, 180 N.J. 284, 289 (2004); see also Report of the Attorney General's Task Force on Sovereign Immunity 211 cmt. (1972). N.J.S.A. 59:1-2 declares it "to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act," and that all its provisions "should be construed with a view to carry out" that legislative declaration. See Chatman, 128 N.J. at 414 (explaining the TCA "reestablished blanket immunity [for public entities] subject to specific provisions establishing liability").

In analyzing a tort claim against a public entity in New Jersey, the first task is to locate the predicate for liability in the TCA. Troth v. State, 117 N.J. 258, 277 (1989) (O'Hern, J., concurring). If there is no predicate for liability, the inquiry ends. "[P]ublic entities are immune from liability unless they are declared to be liable" by a provision of the TCA. Report of the Attorney General's Task Force on Sovereign Immunity, at 210 cmt. If there is a statutory predicate for liability under the TCA, N.J.S.A. 59:2-1(b) provides it is subject to any immunity the public entity has under the TCA and any defense available to a private person. Thus, "[e]ven when one of the [TCA's] provisions establishes liability, that liability is ordinarily negated if the public entity possesses a corresponding immunity." Rochinsky v. Dep't of Transp., 110 N.J.

14

399, 408 (1988).  It is important to distinguish between situations in which the public entity is immune because there is no predicate for liability in the TCA and those in which there is a predicate for liability in the TCA but the entity has immunity, that is, "absolution from liability," based on another provision of the TCA, some other statute, or the common law.  Merenoff v. Merenoff, 76 N.J. 535, 547 (1978) (quoting Prosser, Law of Torts 970 (4th ed. 1971)).

N.J.S.A. 59:2-2(a), which provides "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of [their] employment in the same manner and to the same extent as a private individual under like circumstances," is one of those "specific provisions establishing liability."  Chatman, 128 N.J. at 414.  Indeed, the comment to N.J.S.A. 59:2-2 describes subsection (a) as the "primary source of public entity liability."  Report of the Attorney General's Task Force on Sovereign Immunity, at 211 cmt.  Our Supreme Court has said the same.  See Robinson v. Vivirito, 217 N.J. 199, 207 (2014) ("This Court has commented that vicarious liability of the public entity for the negligent act of its employee is the primary source of liability for the public entity." (citing Tice v. Cramer, 133 N.J. 347, 355 (1993))); see also Rochinsky, 110 N.J. at 409 (identifying N.J.S.A. 59:2-2(a) as one of the "three principal liability sections in the [TCA]").

A-2404-24

N.J.S.A. 59:2-2(a) "establishes the principle of vicarious liability for all public entities." Report of the Attorney General's Task Force on Sovereign Immunity, at 211 cmt. Thus, "[t]he primary liability imposed on public entities is that of respondeat superior: when the public employee is liable for acts within the scope of that employee's employment, so too is the entity; conversely, when the public employee is not liable, neither is the entity." Tice, 133 N.J. at 355 (citing N.J.S.A. 59:2-2). A public entity has no vicarious liability for the acts of its employees outside the scope of employment. N.J.S.A. 59:2-2(a); see also Cosgrove v. Lawrence, 214 N.J. Super. 670, 680 (Law Div. 1986) (explaining "once a determination is made that the act is not within the scope of employment," the focus of the action shifts from vicarious liability to consideration of whether the employer could be held directly liable for its negligent hiring and supervision), aff'd, 215 N.J. Super. 561 (App. Div. 1987). In short, N.J.S.A. 59:2-2(a) is a liability predicate, not an immunity provision. See Ellison v. Hous. Auth. of S. Amboy, 162 N.J. Super. 347, 350 (App. Div. 1978) (explaining a corresponding provision under the TCA is a liability predicate because it "expressly declar[es] the liability of a public entity" for an injury caused by a dangerous condition of the public entity's property).

Although N.J.S.A. 59:2-1.3 disables certain immunities that might otherwise absolve public entities of liability in sexual abuse cases, it does not provide a statutory predicate for the vicarious liability of public entities for sexual assault or abuse committed outside a public employee's scope of employment. See N.J.S.A. 59:2-1(a), :2-2(a). N.J.S.A. 59:2-2(a) provides for liability of a public entity "for injury proximately caused by an act or omission of a public employee" only "within the scope of [their] employment." As section 219(2)(d) of the Restatement (Second) of Agency addresses an employer's liability for conduct occurring outside the scope of employment, it does not provide a basis for holding a public entity, like defendant, liable under the TCA.

Plaintiffs' failure here to identify a liability predicate in the TCA as to defendant's vicarious liability for Realpe's sexual assaults is fatal to their vicarious liability claims. See Tice, 133 N.J. at 355 ("The liability of the public entity must be found in the Act . . . ."); see also Kolitch v. Lindedahl, 100 N.J. 485, 502 (1985) (Handler, J., dissenting) (explaining a plaintiff bringing a negligence action against a public entity "must first establish the predicates for liability, and later avoid application of any provision granting the sovereign immunity"); Troth, 117 N.J. at 276-77 (O'Hern, J., concurring).

A-2404-24

Hardwicke does not change our analysis. Hardwicke recognized an exception to the general rule of respondeat superior that an employer is "liable for torts of one of its employees only when the latter was acting within the scope of [their] employment." Di Cosala v. Kay, 91 N.J. 159, 168-69 (1982); see also Hardwicke, 188 N.J. at 102. Relying on Lehmann v. Toys 'R' Us Inc., 132 N.J. 587, 619-20 (1993)—which held an employer could be vicariously liable under Restatement (Second) of Agency § 219(2)(d) for the conduct of a supervisor acting outside the scope of [their] employment if it had "delegate[d] the authority to control the work environment to a supervisor and [the] supervisor abuse[d the] delegated authority"—Hardwicke similarly held a private boarding school qualifying as a passive abuser under the CSAA, N.J.S.A. 2A:61B-1(a)(1), could be vicariously liable for common law claims based on conduct falling within the CSAA's definition of sexual abuse committed by an employee acting outside the scope of their employment. See 188 N.J. at 100-02.

Although Hardwicke held a private entity may be held liable for the torts of an employee outside the employee's scope of employment, it does not follow that a public entity is likewise liable because, as noted above, "[t]he liability of the public entity must be found in the [TCA]." Tice, 133 N.J. at 355; see also N.J.S.A. 59:2-1(a) ("Except as otherwise provided by this act, a public entity is

18

not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."). Plaintiffs failed to identify any provision of the TCA holding a public entity liable for the torts of a public employee occurring outside the scope of employment, which undermines their vicarious liability claims against defendant. Again, individuals asserting claims against a public entity "must first establish the predicates for liability" in the TCA "and later avoid application of any provision granting the sovereign immunity." Kolitch, 100 N.J. at 502 (Handler, J., dissenting).

We are also unpersuaded by plaintiffs' argument the 2019 amendments sought to disable the fundamental immunity provided by the TCA as opposed to the specific immunities set forth in the TCA. In E.C. by D.C. v. Inglima-Donaldson, we noted N.J.S.A. 59:2-1.3(a)(1) was silent as to which immunity provisions of the TCA the Legislature "intended to disable." 470 N.J. Super. 41, 53 (App. Div. 2021). However, we determined the immunity language under N.J.S.A. 59:2-1.3(a)(1) was directed at the specific immunities set forth in the

statute, such as N.J.S.A. 59:2-10.[7] Id. at 53-54; see also Margolis & Novack, Title 59: Claims Against Public Entities, cmt. 1 on N.J.S.A. 59:2-10 (2025) ("This section establishes a basis for employer immunity once a ground is established for the employer's vicarious liability under 59:2-2[(]a[)].").  We conclude the "immunity" language in N.J.S.A. 59:2-1.3(a)(1) does not apply more broadly to the blanket immunity afforded to public entities, but rather to the specifically delineated immunities in the TCA, as noted in E.C.

To impose liability on defendant simply because Realpe was an employee at the time he sexually assaulted plaintiffs—which plaintiffs agree was not within the scope of his employment—would essentially impose strict liability on defendant.[8]  If the Legislature had intended to impose liability on public entities for an employee's sexual assault committed outside the scope of

---

[7]  N.J.S.A. 59:2-10 provides:  "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct."

[8]  Our opinion does not impact plaintiffs' ability to proceed on their direct claims against defendant for negligent training and supervision, which are not limited to acts Realpe committed within the scope of his employment.  See Schultz v. Roman Cath. Archdiocese of Newark, 95 N.J. 530, 534-35 (1984) ("Under respondeat superior, an employer is liable only for those acts of [their] employee committed within the scope of employment, while negligent hiring reaches further to cover acts outside the scope of employment."); G.A.-H. v. K.G.G., 238 N.J. 401, 415 (2019).

employment, it would have clearly said so. It did not do so here in adopting N.J.S.A. 59:2-1.3(a)(1), and there is no indication it sought to do away with the need to establish a predicate for liability under N.J.S.A. 59:2-2(a). Accordingly, we determine the trial court erred in denying defendant's motion for summary judgment and granting plaintiffs' summary judgment motions regarding vicarious liability.

B.

Defendant next argues the court erred in reviving plaintiffs' LAD claims, as the assaults occurred in 2004, and the statute of limitations for such claims is two years. It notes in Montells v. Haynes, our Supreme Court interpreted the LAD to have a two-year statute of limitations, no matter how the claim is characterized. 133 N.J. 282, 286 (1993). Defendant further asserts, relying on Montells, claims of sexual discrimination "present[] special problems" and are "vulnerable to the passage of time." Id. at 293. It asserts out of fairness to the accused, the accuser, and the judicial system, these claims require a "timely adjudication," which is why the Court adopted a "single statute of limitations" for all LAD claims. Id. at 291, 293-94.

Defendant also asserts the 2019 CVA amendments did not impact the LAD statute of limitations. It concedes the Legislature "retroactively opened

21

the door to certain . . . claims involving 'crime[s] of a sexual nature' that otherwise would have been time-barred under N.J.S.A. 2A:14-2" by establishing a new thirty-seven-year statute of limitations period for persons sexually abused as minors under N.J.S.A. 2A:14-2a, and a two-year filing window for claims that occurred prior to December 1, 2019, which would have been time-barred even under the extended statutes of limitations period set forth in N.J.S.A. 2A:14-2b. However, defendant notes neither N.J.S.A. 2A:14-2a nor N.J.S.A. 2A:14-2b reference the LAD or Montells' judicially created statute of limitations.

Further, defendant argues the trial court did not recognize the legislative intent behind the amendments and did not explain why Montells would no longer govern. It claims the LAD is not a statute for the vindication of personal injury claims, but rather a statute to provide equitable relief, which is why Montells had to determine an appropriate statute of limitations period for LAD claims. Moreover, it maintains when the Legislature specified the statutes affected by the amendments, it only referenced the CSAA, TCA, and CIA, which indicates it did not intend the amendments to apply to the LAD. Defendant asserts the adoption of N.J.S.A. 2A:14-2b enabled plaintiffs to file their tort claims, but did not "revive" their LAD claims, which it asserts expired in 2006.

Additionally, defendant maintains plaintiffs' hostile educational environment claims were not recognized under the LAD until 2007,[9] whereas the events alleged in this case took place in 2004, and thus plaintiffs cannot maintain such claims. In short, because plaintiffs' claims were not cognizable at the time Realpe sexually assaulted them, defendant contends the court should have dismissed their claims and erred by allowing the claims to proceed retroactively.

---

[9] Hostile educational environment claims were first recognized in L.W. v. Toms River Regional School Board of Education, 189 N.J. 381, 402-03 (2007). Our Supreme Court adapted the Lehmann four-prong test to establish the following standard for hostile educational environment claims based on sex:

> to state a claim under the LAD for student-on-student hostile school environment harassment, an aggrieved student must allege: (1) discriminatory conduct that would not have occurred but for the student's protected characteristic, i.e., sex, sexual orientation, gender identity or expression, race, etc.; (2) that a reasonable student of the same age, maturity level, and protected characteristic would (3) consider sufficiently severe or pervasive enough (4) to create an intimidating, hostile, or offensive school environment, and (5) that the school district failed to reasonably address such conduct.
>
> [C.V. by & through C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 311 (2023) (quoting L.W., 189 N.J. at 402-03) (internal quotation marks omitted).]

23

Defendant maintains even if a hostile educational environment claim could be applied retroactively, the trial court still erred in denying its summary judgment motions because plaintiffs did not establish disputed issues of material fact as to the elements of their prima facie claims. Defendant argues, under L.W., plaintiffs need to prove, among other things, "the school district failed to reasonably address the discriminatory or harassing conduct." Defendant contends plaintiffs' proofs were deficient as to this prong because they never advised any employee of defendant about Realpe's assault.

The trial court determined the plain language of N.J.S.A. 2A:14-2b encompassed plaintiffs' LAD claims. However, the court did not specifically address defendant's argument under L.W. that even if N.J.S.A. 2A:14-2b permitted an LAD claim, plaintiffs' hostile educational environment claims were not recognized until 2007, subsequent to Realpe's sexual assaults in this matter. The court rejected defendant's argument that plaintiffs failed to raise a fact issue regarding whether "the school district failed to reasonably address the discriminatory or harassing conduct." It noted:

> making all favorable inferences towards the nonmovant [p]laintiff, there is a genuine dispute of material fact as to whether [defendant] or any of its officials had reason to know about . . . Realpe's conduct . . . . [T]he principal of . . . Garcia's high school at the time of the incident, cited in a written statement . . . Realpe had formed

24

unhealthy relationships with students and did not develop a proper distinction between teacher and student. . . . Realpe also admitted to being warned by his fellow teachers and his supervisor . . . about his behavior. [Defendant] ignored [its] suspicions towards . . . Realpe, did not investigate . . . Realpe's relationships with multiple underage students, and allowed him to remain employed until his termination in 2005. This evidence is sufficient to create a genuine dispute of material fact that must be decided by a jury at trial.

N.J.S.A. 2A:14-2b, as adopted in 2019, in pertinent part, provides:

> a. Notwithstanding the statute of limitations provisions of N.J.S.[A. ]2A:14-2, section 2 of P.L.2019, c. 120 (C.2A:14-2a), section 1 of P.L.1964, c. 214 (C.2A:14-2.1), or any other statute, an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c. 7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c. 109 (C.2A:61B-1), that occurred prior to the effective date of P.L.2019, c. 120 (C.2A:14-2a et al.), and which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date.

We conclude the 2019 CVA amendments set forth in N.J.S.A. 2A:14-2b, reviving the statute of limitations for sexual assault claims, applies to plaintiffs' LAD claims. The plain and unambiguous language of N.J.S.A. 2A:14-2b provides it applies to "an action at law" stemming from "an injury resulting from the commission of [a] sexual assault." The statute contains no limiting language

25

that would exclude claims brought pursuant to the LAD.[10]  Had the Legislature intended to limit the claims that could be brought under the statute, it could have done so.  Instead, it chose to use broad, unqualified terms.

The Supreme Court in Montells recognized it had previously characterized LAD claims as "equitable in nature" when parties were not entitled to a jury trial.  133 N.J. at 287.  However, it noted:

> the Legislature [subsequently] amended [the] LAD to provide for a jury trial in LAD cases.  L.1990, c. 12, § 2 (codified at N.J.S.A. 10:5–13).  The amendment also provided that "[a]ll remedies available in common law tort actions shall be available to prevailing plaintiffs.  These remedies are in addition to any legal or equitable relief provided by this act or any other statute."
>
> [Ibid. (third alteration in original) (emphasis added).]

The Court referenced our decision in that case, noting the plaintiff's claim was for "personal injuries arising out of the sexual harassment and sexual discrimination under LAD."  Id. at 288; see also Montells v. Haynes, 258 N.J. Super. 563, 568-69 (App. Div. 1992), rev'd in part, 133 N.J. 282 (1993).  It quoted our decision:  "We find nothing in the LAD to express a legislative intent that for personal injuries sustained as a result of discrimination under [the] LAD

---

[10]  N.J.S.A. 2A:14-2a similarly employs the phrase "[e]very action at law" in prescribing the statute of limitations applicable to legal actions arising from a sexual assault occurring after December 1, 2019.

that the limitation for bringing such an action should be anything other than the standard statute of limitation for personal injury claims." Montells, 133 N.J. at 288 (quoting Montells, 258 N.J. Super. at 571-72).

The Court ultimately agreed and applied the same statute of limitations applicable to personal injuries. Id. at 292. It noted, "the statute of limitations for personal-injury claims more closely comports with the purpose of [the] LAD." Ibid. Given our courts have characterized LAD claims as analogous to personal injury actions and subject to the same limitations period, it follows that LAD actions would fall within the "action at law" language under N.J.S.A. 2A:14-2b, particularly in the absence of any qualifying language. The statute's language encompasses civil actions seeking damages for injuries arising from sexual assaults, which aligns with how we have treated LAD claims as tort-like personal injury actions. The statute does not distinguish between actions at law for sexual assault under the TCA and LAD. Accordingly, we conclude an LAD claim is as an action at law for the purposes of N.J.S.A. 2A:14-2b and not an equitable claim as asserted by defendant.

We are mindful of defendant's argument the legislative history does not specifically indicate the Legislature intended N.J.S.A. 2A:14-2b to apply to LAD claims, because it only discusses claims brought under the CIA, CSAA,

27

and TCA. See S. Judiciary Comm. Statement to S. 477 (Mar. 7, 2019) (L. 2019, c. 120). However, because we determine the statute is unambiguous and does not by its terms preclude LAD claims, we cannot resort to extrinsic evidence unless "a literal reading of the statute would yield an absurd result, particularly one at odds with the overall statutory scheme." Kocanowski, 237 N.J. at 10 (quoting Twiggs, 233 N.J. at 533). That is not the case here.

Regarding defendant's contention Montells provided a two-year statute of limitations for LAD claims because allegations of sexual discrimination require a "timely adjudication," the same argument can be made regarding suits alleging sexual assault under different theories of recovery. However, the Legislature decided any such concerns regarding timely adjudication were outweighed by protecting victims of sexual abuse, and therefore, it expanded the statute of limitations for these claims.

Accordingly, we conclude an LAD claim is as an action at law for the purposes of N.J.S.A. 2A:14-2b. To the extent the Legislature did not intend N.J.S.A. 2A:14-2b to revive LAD claims, it can amend and clarify the statute. However, we decline to address whether plaintiffs' specific LAD claims should apply retroactively under L.W., as the trial court did not address this question.

See Ins. Co. of N. Am. v. Gov't Emps. Ins. Co., 162 N.J. Super. 528, 537 (App. Div. 1978).[11]

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[11]  To the extent the court determines L.W. should be applied retroactively, we conclude the court correctly determined there is a fact issue regarding whether defendant "failed to reasonably address the discriminatory or harassing conduct," substantially for the reasons expressed in its written decision. However, nothing in this opinion should be construed as expressing an opinion on the merits of whether plaintiffs' particular LAD claims can be asserted retroactively.

A-2404-24